[No. G016219. Fourth Dist., Div. Three. Apr. 12, 1995.]

FRANK JAKUBAITIS et al., Plaintiffs and Respondents, v.
THEODORE FISCHER et al., Defendants and Appellants.

**COUNSEL**

Wallace, Grantham & Schwartz, Steve R. Schwartz and Leah Grantham for Defendants and Appellants.

Walt D. Mahaffa for Plaintiffs and Respondents.

**OPINION**

**SONENSHINE, J.**—In this case of first impression, we consider whether Civil Code section 3051 or 3080 et seq.[1] governs a dispute involving a veterinary lien for services rendered to a horse.

I

The facts are not in dispute. We therefore summarily discuss them as background for the underlying issue. In February 1994, a blood-bay horse, owned by Frank and Tara Jakubaitis, was admitted to Chino Valley Equine Hospital for emergency medical care. The horse, which was hospitalized through early March, was treated by Theodore Fischer, D.V.M., the hospital's owner and primary veterinarian.

---

[1]All further statutory references are to the Civil Code.

A letter sent at the time of discharge notified the Jukabaitises the horse would not be released until the outstanding bill of $9,751 was paid. Moreover, the letter informed them that failure to make payment within 10 days would result in the sale of the horse. (§§ 3051, 3052.)[2]

Timely payment was not made, but the hospital's attempt to sell the horse was unsuccessful. The bill remained unpaid and the horse stayed in Fischer's possession. Finally, the Jakubaitises sued the hospital and Fischer, seeking injunctive relief and alleging conversion, claim and delivery and intentional/negligent infliction of emotional distress. (§§ 3080, 3080.01, 3080.02.)[3] The Jakubaitises' motion for substitution of undertaking and release of livestock

---

[2]"Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof, by labor or skill, employed for protection, improvement, safekeeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him [or her] from the owner for such service; . . . and veterinary proprietors and veterinary surgeons shall have a lien dependent on possession, for their compensation in caring for, boarding, feeding, and medical treatment of animals." (§ 3051.)

"If the person entitled to the lien provided in Section 3051 is not paid the amount due, and for which such lien is given, within 10 days after the same shall have become due, then such lienholder may proceed to sell such property, or so much thereof as may be necessary to satisfy such lien and costs of sale at public auction, and by giving at least 10 days' but not more than 20 days' previous notice of such sale by advertising in some newspaper published in the county in which such property is situated . . . . The proceeds of the sale must be applied to the discharge of the lien and the cost of keeping and selling the property; the remainder, if any, must be paid over to the legal owner thereof." (§ 3052.)

[3]"(a) 'Livestock' means any cattle, sheep, swine, goat, or horse, mule, or other equine. [¶] (b) 'Livestock servicer' means any individual, corporation, partnership, joint venture, cooperative, association or any other organization or entity which provides livestock services. [¶] (c) 'Livestock Services' means any and all grazing, feeding, boarding, general care, which includes animal health services, obtained or provided by the livestock servicer, or his employee, transportation or other services rendered by a person to livestock for the owner of livestock, or for any person acting by or under the owner's authority." (§ 3080.)

"A livestock servicer shall have a general lien upon the livestock in its possession to secure the performance of all obligations of the owner of the livestock to the livestock servicer for . . . the following: [¶] . . . The provision of livestock services to the livestock in possession of the livestock servicer." (§ 3080.01, subd. (a).)

"In addition to any other rights and remedies provided by law, a lienholder may: [¶] (a) Retain possession of the livestock and charge the owner for the reasonable value of providing livestock services to the livestock until the owner's obligations secured by the lien have been satisfied. [¶] (b) Proceed to sell all or any portion of the livestock pursuant to Section 3080.16 if: [¶] (1) A judicial order authorizing sale has been entered pursuant to Section 3080.06; [¶] (2) A judgment authorizing sale has been entered in favor of the lienholder on the claim which gives rise to the lien; or [¶] (3) The owner of the livestock has released, after the lien has arisen, its interest in the livestock in the form prescribed by Section 3080.20. [¶] (c) A lienholder may commence a legal action on its claim against the owner of the livestock . . . ." (§ 3080.02.)

was granted (§§ 3080.09, 3080.11),[4] and Fischer was ordered to return the horse to them upon their posting a $500 bond.

Fischer appeals the court's orders (1) granting the section 3080.09 motion, and (2) returning the horse to the Jakubaitises.[5]

## II

■ The trial court, in ordering the return of the horse to the Jakubaitises, impliedly found section 3080 et seq. controlling and sections 3051 and 3052 inapt. The sole issue we address is which statutory scheme governs this fact situation.

We begin with an overview of the relevant statutes "since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) Section 3051 recognizes veterinary proprietors' and veterinary surgeons' lien rights for compensation in caring for, boarding, feeding and medically treating animals. Sections 3080 and 3080.01 govern liens applying to livestock servicers who provide "all grazing, feeding, boarding, general care, which includes animal health services" to livestock including "horse, . . . or other equine."

Moreover, section 3052 permits the lienholder, after giving appropriate notice to the debtor, to sell the animal at public auction. Section 3080.02 also permits the lienholder to sell the animal but only after judicial authorization, a judgment or consent of the debtor. And, pursuant to sections 3080.09 and 3080.10, the debtor, after the posting of an undertaking, may regain possession of the animal before adjudication of the dispute.

Both statutory schemes facially appear applicable. Fischer, as a veterinary proprietor, provided care, boarding, feeding and medical services to a horse.

---

[4] "At any time after the lienholder has filed a complaint and claimed a lien under this chapter, . . . the owner of the livestock may apply to the court in which the action was brought for an order for substitution of an undertaking which meets the requirements of Section 3080.11 for the livestock held by the lienholder. [¶] (b) The application for such order shall be executed under oath and, unless included within a notice of opposition to sale as set forth in Section 3080.05, or except for good cause shown, shall be made upon noticed motion. Unless the parties otherwise agree, a hearing shall be held on the motion not less than five nor more than 10 days after service of notice of motion." (§ 3080.09, subds. (a), (b).)

"The undertaking to be substituted for livestock shall be by the owner to pay to the lienholder an amount equal to the sum of (1) the fair market value of the livestock sought to be recovered, and (2) the costs to be incurred by the lienholder in order to assemble and turn over the livestock." (§ 3080.11.)

[5] The Jakubaitises' suit is pending. On November 16, 1994, the Jakubaitises filed a joint case management statement acknowledging a November 23 hearing date. Both parties stated their intent to file a summary judgment motion but our review of the superior court file indicates no further action has been taken.

(§ 3051.) As a livestock servicer, he seeks compensation for health care services. (§ 3080.) "[W]hen confronted with two statutes dealing with the same subject matter, they should, if possible, be harmonized and effect given to both." (*Brandt* v. *Superior Court* (1967) 67 Cal. 2d 437, 442 [62 Cal.Rptr. 429, 432 P.2d 31].) In so doing, we recall "the Legislature does not indulge in idle acts and that a [statutory provision] is to have some effect." (*Sondeno* v. *Union Commerce Bank* (1977) 71 Cal.App.3d. 391, 395 [139 Cal.Rptr. 229].) We follow the fundamental rule that "a court ' "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' " (*Dameshghi* v. *Texaco Refining & Marketing, Inc.* (1992) 3 Cal.App.4th 1262, 1276 [6 Cal.Rptr.2d 515].)

Section 3051, enacted in 1872, codified a servicer's common law lien right against serviced property for which there remained an outstanding balance. Although animal servicers were impliedly included within the statute's purview, amendments in 1877 and 1907 explicitly recognized the lien rights extended to "livery or boarding or feed stable proprietors and persons pasturing horses or stock" and "persons who make, alter, or repair any article of personal property, and veterinary hospital proprietors and veterinary surgeons." (See Historical and Statutory Notes, 11A West's Ann. Civ. Code (1993 ed.) § 3051, p. 112.)

Section 3051 was amended several times throughout this century, but the California animal servicers' statutory lien rights and remedies remained unchanged. However, in the late 1970's, livestock owners and servicers sought statutory amendments, arguing section 3051 inadequately addressed situations unique to their industry.[6] (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 334 (1979-1980 Reg. Sess.) as amended July 20, 1979, sometimes referred to as Bill 334.)

Specifically, the livestock lobby explained section 3051's recognition of a specific lien on each animal placed impractical record keeping demands upon the livestock servicers requiring the maintenance of separate records for each animal. (Assem. Bill No. 334 (1979-1980 Reg. Sess.).) Moreover, adverse economic consequences were incurred by the livestock owner when denied possession of the animal prior to satisfaction of the outstanding balance. (Californian Cattlemen's Association, News Release (Jan. 23, 1979).) And finally, the industry suggested it was unclear whether the lien

---

[6]Included within those seeking statutory changes were such diverse groups as: California Cattlemen's Association, California Cattle Feeder's Association, League of California's Milk Producers, Crocker National Bank and the California Farm Bureau Federation.

cost limitation applied to each animal or to the herd in general.[7] (Assem. Bill No. 334 (1979-1980 Reg. Sess.).)

Assemblyman Bill McVittie, who spearheaded the Legislature's response to these concerns, introduced Bill 334 during the 1979-1980 regular legislative session, which deleted "livery or boarding or feed stable or feed yard proprietors, and persons pasturing horses or stock" from section 3051. The bill also enacted section 3080[8] which included as livestock services "any and all grazing, feeding, boarding, general care, *veterinary*, transportation or other services rendered by a person to livestock for the owner of livestock, or for any person acting by or under the owner's authority." (Assem. Bill No. 334 (1979-1980 Reg. Sess.) at p. 3, italics added.)

During review of the bill's proposed legislation, the Assembly Committee on Judiciary noted, "This bill has defined services secured by a general Livestock Service Lien to include veterinary services. Nevertheless, it has not deleted the specific lien given veterinarians in Civil Code Section 3051. Did the author intend to give veterinarians the option to use the general lien provided by the bill and the specific lien for his services under existing law? Which sale procedure would be appropriate for a veterinarian to use in order to foreclose his lien? Why shouldn't veterinarians be required to use one procedure or the other?"

Thereafter, the definition of livestock services in section 3080 was revised. Reference to veterinary services was deleted and general care services was amended to include animal health services. (Assem. Bill No. 334 (1979-1980 Reg. Sess.) as amended Apr. 4, 1979.) Other changes were made and the bill was signed into law in September.[9]

The Legislature's intent is clear. Section 3051, as amended, continues to govern veterinary proprietors' and veterinary surgeons' lien rights. Conversely, section 3080 et seq. govern all other livestock service providers. The apt statutory scheme is determined by who is in possession and who provides the services and not by which service is provided.

Every aspect of the legislative history buttresses this conclusion. Bill 334 was introduced in response to livestock industry pressure to correct problems affecting that industry. Veterinarians were neither a part of this lobby nor

---

[7]The constitutionality of certain aspects of section 3051 was·also questioned. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 334 (McVittie) (1979-1980 Reg. Sess.) as amended July 20, 1979, p. 3.)

[8]Section 3080, repealed in 1931, formerly addressed a different lien right.

[9]Assembly Bill 334 was once more amended before enacted by the Legislature and signed by the Governor. However, this amendment has no effect upon the issue we address.

were they affected by the problems. Indeed, the only reference to veterinarians in the entire legislative history is the Judiciary Committee's notation of the conflict that would result if the original bill was not amended. And as discussed, it was amended to eliminate any reference to veterinarians in section 3080. Therefore, it is no accident the statutes read the way they do. The Legislature's omission of veterinary care from section 3080 indicates its intention to retain section 3051 as the governing scheme for veterinary surgeons and veterinary proprietors in possession while creating a new statutory scheme for other livestock servicers.

The Jakubaitises argue this interpretation will lead to absurd results whenever a veterinarian's services overlap with those of another livestock servicer, or vice versa. Specifically, they ask what will happen when a veterinarian, operating a livery stable, renders health care services to a horse or a livestock stable owner obtains necessary veterinarian care for a boarded horse. Their argument is without merit. When these services are rendered by a veterinarian in possession of an animal, sections 3051 and 3052 control regardless of whether those services are only for medical care or also include feeding, grazing and boarding. When these services are provided or procured by other livestock servicers in possession, section 3080 et seq. controls the lien rights.

The order is reversed. The matter is remanded to the trial court to order (1) possession of the horse returned to Theodore Fischer and his veterinary hospital; and (2) the bond to be discharged. (Cal. Rules of Court, rule 381(c).) Appellants shall recover their costs on appeal.[10]

Sills, P. J., and Crosby, J., concurred.

---

[10]The lawsuit is not before us. It does appear however our finding that Fischer was in lawful possession of the horse has rendered it moot.