[No. B205735. Second Dist., Div. Five. Nov. 19, 2009.]

MARTIN KELLY, Plaintiff and Respondent, v.
CB&I CONSTRUCTORS, INC., Defendant and Appellant.

444

**COUNSEL**

Horvitz & Levy, Lisa J. Perrochet, Robert H. Wright; Lyddan Law Group and Jeffrey D. Lyddan for Defendant and Appellant.

Law Offices of Douglas G. Gray, Douglas G. Gray; Cotkin & Collins, Robert G. Wilson and Terry L. Kesinger for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

A jury found that defendant CB&I Constructors, Inc. (defendant), negligently sparked a brush fire that caused significant damage to a ranch (the property) owned by plaintiff Martin Kelly (plaintiff). Because plaintiff had a personal reason to restore the property, the jury awarded plaintiff substantially more in damages to restore the property than the property was worth immediately before the fire. The trial court also instructed the jury that

plaintiff could recover damages for annoyance and discomfort and the jury awarded such damages, although plaintiff did not reside on the property at the time of the fire. The trial court doubled the amount awarded by the jury for tree damage pursuant to Civil Code section 3346, and awarded plaintiff attorney fees pursuant to Code of Civil Procedure section 1021.9, which permits such awards in cases of trespass on property "under cultivation" or "intended or used for the raising of livestock."

We hold as follows: (1) defendant forfeited any error in the jury verdict form; (2) the jury's award of restoration damages in excess of the property's value was supported by substantial evidence and was not excessive as a matter of law; (3) the undisputed evidence established that plaintiff did not reside on the property at the time of the trespass, and his storage of personal property there was not the type of "occupancy" that would justify his recovery of annoyance and discomfort damages; (4) tree damage caused by a negligently spread fire is wrongful injury to trees caused by a trespass subject to mandatory doubling pursuant to Civil Code section 3346, notwithstanding the general provision governing fire damage in Health and Safety Code section 13007; and (5) substantial evidence supported the trial court's finding that plaintiff intended to use the property for raising livestock, entitling plaintiff to an award of attorney fees under Code of Civil Procedure section 1021.9.

## BACKGROUND

A. *Factual Background*[1]

1. *The Property*

The property at issue in this case is a 34-acre ranch located in oak woodland in Green Valley, California, in the hills of northern Los Angeles County between Santa Clarita and Lancaster. The property had three houses, referred to respectively as the upper ranch, middle ranch, and lower ranch. Each house had its own pasture. Other improvements included a vintage wooden barn, a garage, a kennel, chicken coops, tack buildings, stud barns, hay barns, and various utility buildings. The property had 150 to 200 oak trees and a running stream.

Plaintiff purchased the property in 1972. He moved into the upper ranch house with his family and lived there for 23 years. He sometimes rented out

---

[1] We set forth the facts in the light most favorable to the jury's verdict, resolving all conflicts and drawing all inferences in favor of that verdict, and deferring to all implicit credibility determinations of the trier of fact. (See *Palm Medical Group, Inc. v. State Comp. Ins. Fund* (2008) 161 Cal.App.4th 206, 218 [74 Cal.Rptr.3d 266]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1233, fn. 2 [19 Cal.Rptr.3d 416]; *Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 642 & fn. 3 [11 Cal.Rptr.3d 807].)

the middle and lower ranches, and used the rental income to keep current on the mortgage. He moved away from the property in 1994 or 1995, after he retired and his son joined the Army. Plaintiff always planned to return to the ranch, however, and maintained the ranch as his permanent residence address.

After he moved out, plaintiff rented out all three houses, and the houses were occupied by various tenants from 1995 to the date of the fire in 2002. Plaintiff did not rent out the entire property, however. He continued to store tools, equipment and firewood in storage buildings on the property.

At trial, plaintiff testified that he intended to move back to the property "as soon as possible" with his fiancée and his adult son. Plaintiff and his fiancée intended to marry and move to the property once plaintiff's fiancée had moved her business from Oxnard to Santa Clarita. Plaintiff's son, a veteran, was disabled. At the property, plaintiff could care for his son, but they could still live in separate houses and maintain some independence and privacy. Plaintiff had not returned to the property, however, because his fiancée required daily medical treatment at a hospital in Woodland Hills, which was far from the property.

### 2.  *The Fire*

In June 2002, defendant was erecting a municipal water tank approximately 15 miles from the property. Sparks ignited a large brush fire known as the Copper Canyon fire. The fire spread over 20,000 acres, including the property.

The fire burned the brush on the hillsides surrounding the property and destroyed many trees, including a number of oak trees. The fire completely destroyed the vintage wooden barn and damaged several other structures. The roof and corner of the middle ranch house also sustained fire damage.

### 3.  *The Mudslides*

Between 1972 and 2002, plaintiff "never had any erosion whatsoever" on his property. After the fire, heavy rains resulted in mudslides that caused extensive damage to the property. For example, the mudslides essentially destroyed the lower ranch house, and gouged a gully more than 200 feet long, 15 feet wide and 12 feet deep across one of the pastures. The fire was a substantial factor in causing the mudslide damage because fire had destroyed the vegetation on the hills above the property.

### 4.  *The Damage*

Plaintiff was a real estate broker before he retired. Plaintiff testified that his property was worth $1.6 million to $1.8 million at the time of the fire.

Plaintiff testified that the property had no market value whatsoever in its current condition because of the repairs that were required and the danger of future mudslides.

Plaintiff's expert witness testified that the property was worth $1.8 million at the time of the fire.[2] She testified that the value of the property after the 2005 mudslide was very little or nothing because there was continuous debris flow, and one could not determine whether the flood control channels would be adequate or predict the final costs of restoring the property.

Plaintiff's expert estimated the total cost of restoration of the structures and land would be approximately $2.8 million. This amount included, inter alia, $437,000 to rebuild the vintage barn; $590,375 to build an erosion and flood control system; $477,641 to restore the stream to its former course; and $423,168 to remove the silt and sand from the pastures and cover the pastures with a mulching mixture.

Plaintiff's expert arborist appraised 91 trees on the property as of a time prior to their damage or destruction by the fire or subsequent mudslides, and valued them at $411,800. In addition, he valued 12 trees that had been washed away by the mudslides at $132,734, for a total of $544,534.

B. *Procedural Background*

In June 2003, plaintiff sued defendant and others for negligence and trespass. The trial court bifurcated the trial into liability and damages phases. In the liability phase, the jury rendered special verdicts finding that (1) defendant was negligent; (2) defendant's negligence was a substantial factor in causing the Copper Canyon fire; (3) defendant was 90 percent at fault, and another defendant was 10 percent at fault; (4) defendant caused a fire to enter plaintiff's property; (5) defendant was reckless; but (6) defendant did not act with malice.

As to the damages phase, the trial court instructed the jury, "If plaintiff has a genuine desire to repair the property for personal reasons, and if the costs of repair are reasonable given the damage to the property and the value after repair, then the costs of repair may be awarded even if they exceed the property's loss of value." The jury special verdict form asked the jury to determine if plaintiff had "a genuine desire to rebuild and repair his property for personal reasons" and, if so, "the present costs of rebuilding and repairing [plaintiff's] real property." The jury found that plaintiff had a genuine desire to rebuild for personal reasons, and determined plaintiff's damages as follows: (1) $2,629,810 for the present costs of rebuilding and repairing the

---

[2] Defendant's expert testified that the property was worth $710,000 before the fire.

property, not including the value of trees; (2) $375,000 in tree damage; (3) $99,000 in past lost rental income; and (4) $543,000 for discomfort, annoyance, inconvenience or mental anguish. The jury thus determined plaintiff's total damages to be $3,646,810.

After trial, plaintiff moved pursuant to Civil Code section 3346 for an award of double the tree damages and for attorney fees pursuant to Code of Civil Procedure section 1021.9. As relevant here, the trial court granted both motions. The trial court awarded plaintiff $756,900 in attorney fees; costs of $22,771.81; and expert witness fees of $73,832.81. After adjusting the jury's damage award for defendant's comparative fault, the trial court entered judgment in the total amount of $4,721,014.12.

Defendant moved for a new trial, arguing that the damages were excessive as a matter of law. Defendant also moved for judgment notwithstanding the verdict, arguing that (1) plaintiff was not entitled to recover annoyance and discomfort damages because he did not occupy the property at the time of the fire, and (2) Civil Code section 3346 did not apply to fire damage, so that plaintiff was not entitled to an award of double the tree damages. The trial court denied both motions. Defendant timely appealed.

## DISCUSSION

### A.  *Award of Restoration Costs*

#### 1.  *General Damages Principles*

█ A plaintiff injured by tortious misconduct is entitled to recover damages in an "amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.)  **(2)**  For tortious injury to real property, the general rule is that the plaintiff may recover the lesser of (1) the diminution in the property's fair market value, as measured immediately before and immediately after the damage; or █ the cost to repair the damage and restore the property to its pretrespass condition, plus the value of any lost use. The practical effect of this rule is to limit damages to property to the fair market value of the property prior to the damage. (*Safeco Ins. Co. v. J & D Painting* (1993) 17 Cal.App.4th 1199, 1202–1203 [21 Cal.Rptr.2d 903]; see generally 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1727, pp. 1262–1263; *id.*, § 1728, pp. 1263–1264; cf. *People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627, 634–635 [188 Cal.Rptr. 913] [approving recovery containing elements of both diminution in value and restoration costs].)

Notwithstanding this general limitation, if a plaintiff has a personal reason to restore the property to its former condition, he or she may recover the

restoration costs even if such costs exceed the diminution in value. This rule is sometimes referred to as the " 'personal reason' exception." (*Orndorff v. Christiana Community Builders* (1990) 217 Cal.App.3d 683, 687–688 [266 Cal.Rptr. 193] (*Orndorff*); *Heninger v. Dunn* (1980) 101 Cal.App.3d 858, 863–864 [162 Cal.Rptr. 104] (*Heninger*); see also *Weld County Bd. of County Com'rs v. Slovek* (Colo. 1986) 723 P.2d 1309, 1314–1316; *Roman Catholic Church v. Louisiana Gas* (La. 1993) 618 So.2d 874, 876–880; see generally 6 Witkin, *supra*, Torts, § 1728, pp. 1264–1265; Rest.2d Torts, § 929, com. b, pp. 545–546; 2 Cal. Real Property Remedies and Damages (Cont.Ed.Bar 2d ed. 2002) § 12.31, pp. 784–787; 1 Dobbs, Law of Remedies (2d ed. 1993) § 5.2, pp. 713–721.) Even when this exception applies, however, restoration costs "are allowed only if they are reasonable in light of the value of the real property before the injury and the actual damage sustained." (*Orndorff, supra*, 217 Cal.App.3d at p. 690; see *Housley v. City of Poway* (1993) 20 Cal.App.4th 801, 810 [24 Cal.Rptr.2d 554]; Civ. Code, § 3359 ["Damages must, in all cases, be reasonable . . . ."]; *Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 167–168 [100 Cal.Rptr.2d 662].) For example, "the owner of a unique home . . . cannot insist on its reconstruction where the cost to do so far exceeds the value of the home . . . . Nor are repair costs appropriate where only slight damage has occurred and the cost of repair is far in excess of the loss in value." (*Orndorff, supra*, 217 Cal.App.3d at p. 690.) Whether the restoration costs are reasonable is a question for the trier of fact in the first instance, but an award of such costs may be unreasonable as a matter of law if it is grossly disproportionate to the value of the property or the harm caused by the defendant. (*Ibid.*; see also *Heninger, supra*, 101 Cal.App.3d at pp. 865–866.)

### 2. *The Jury Verdict Form*

In response to an inquiry from this court, defendant contended for the first time that the trial court erred by submitting to the jury a special verdict form that contained no place for the jury to make a specific determination that the restoration costs were reasonable. By not objecting to the special verdict form in the trial court or raising any omission in the special verdict form as an issue on appeal in its opening brief, defendant forfeited any claim of error regarding the verdict form, and therefore we do not reach the issue of whether the verdict form resulted in any prejudicial error. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 550–551 [66 Cal.Rptr.3d 175] [failure to object in trial court to special verdict form on specific ground asserted on appeal forfeited claim of error]; *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 277 [62 Cal.Rptr.3d 665] ["Because [appellant] did not challenge the special verdict form on this ground below, we do not consider it for the first time on appeal."]; see Cal. Rules of Court, rule 3.1580 ["Whenever a party desires special findings by a jury, the party must, before argument, unless otherwise ordered, present to the

judge in writing the issues or questions of fact on which the findings are requested . . . ."]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, p. 790 [point not raised in opening brief will not be considered]; 2 Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 9:21, p. 9-6 (rev. # 1, 2009) ["appellate court has discretion to *disregard* issues not properly addressed in the briefs, effectively treating them as having been *abandoned*"]; see also *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746] ["the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"].)

### 3. *The Jury's Award of Restoration Costs*

Defendant argues that, because the jury's damage award so vastly exceeded the value of the property, the award was excessive as a matter of law. We disagree.

We review the issues of law raised by defendant's contentions de novo, and we review for substantial evidence the jury's findings of fact. (See *Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1092 [61 Cal.Rptr.3d 716].) "Before an appellate court can interfere with a judgment on the ground that it is excessive, 'the excess must either appear as a matter of law, or be such as to suggest, at first blush, passion, prejudice or corruption on the part of the trier of the fact.' [Citation.]" (*Butler v. Peluso* (1957) 154 Cal.App.2d 624, 629 [317 P.2d 57]; see also *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 64 [118 Cal.Rptr. 184, 529 P.2d 608] (*Bertero*); *Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 919–920 [114 Cal.Rptr. 622, 523 P.2d 662]; *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506–507 [15 Cal.Rptr. 161, 364 P.2d 337] (*Seffert*) ["An appellate court can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury."].) "The amount of damages is a fact question, committed first to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. [Citations.] All presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule. [Citations.] [¶] . . . [¶] . . . [W]e do not reassess the credibility of witnesses or reweigh the evidence. To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor. [Citation.]" (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078 [81 Cal.Rptr.2d 46]; see also *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1067

[232 Cal.Rptr. 528, 728 P.2d 1163]; *Bertero, supra,* 13 Cal.3d at p. 64; *Seffert, supra,* 56 Cal.2d at p. 507.)

Defendant asserts, in essence, that the restoration costs were unreasonable in this case because, when stated as a percentage of the property's value, they far exceeded any other award approved by a court in California. In particular, defendant points out that the restoration costs awarded in this case exceeded the value of the property by 67 percent, whereas the court in *Heninger, supra,* 101 Cal.App.3d at page 866, disapproved (in dictum) as "manifestly unreasonable" restoration costs that exceeded the value of the property by only 35 percent. (But see *Sunburst School Dist. No. 2 v. Texaco, Inc.* (2007) 2007 MT 183 [338 Mont. 259, 165 P.3d 1079, 1089–1090] [affirming jury award of $15 million to restore properties with aggregate value of $2 million].)

■ Although such comparisons might sometimes be useful (see, e.g., *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 997 [16 Cal.Rptr.2d 787], disapproved on another ground in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179]), they are of little value in determining whether the damages awarded in this case were reasonable. Damages must be assessed in the manner " ' "most appropriate to compensate the injured party for the loss sustained *in the particular case . . . .* " ' [Citations.]" (*Armitage v. Decker* (1990) 218 Cal.App.3d 887, 904 [67 Cal.Rptr. 399], italics added.) "The vast variety of and disparity between awards in other cases demonstrate that injuries can seldom be measured on the same scale. . . . For a reviewing court to upset a jury's factual determination [of damages] on the basis of what other juries awarded to other plaintiffs for other injuries in other cases based upon different evidence would constitute a serious invasion into the realm of factfinding. [Citations.]" (*Bertero, supra,* 13 Cal.3d at p. 65, fn. 12.) Thus, whether the restoration costs awarded in this case are reasonable cannot be determined through a mechanical comparison to damage awards in other cases.

The jury found that the personal reason exception applied, and defendant does not challenge that finding on appeal. Accordingly, plaintiff was entitled to recover restoration costs in excess of the property's diminution in value, if those costs were reasonable under the circumstances. Defendant challenged the damage award by questioning specific items of restoration work that, it contended, represent a "windfall," putting the property in better condition than it was prior to the fire.

As noted, we view the evidence most favorably to the verdict. (*Westphal v. Wal-Mart Stores, Inc., supra,* 68 Cal.App.4th at p. 1078.) The property was valued at $1.8 million before the fire. Neither party has cited evidence with

respect to the expected value of the property after the restoration work was completed, nor have we seen any such evidence in the record. (See *Orndorff, supra,* 217 Cal.App.3d at p. 690.)

Plaintiff testified that he intended to move back to the property with his fiancée and disabled son as soon as practicable, and that the restoration work was necessary to make that possible. There was thus substantial evidence that plaintiff intended to restore the property for use as his primary residence. Defendant does not specifically challenge the costs of restoring the houses.

There was substantial evidence that the damage to the property from the fire and mudslides was extensive, and that it rendered the property unsuitable for plaintiff's purposes. With respect to restoration costs questioned by defendant, there was evidence of the following: $590,000 for a new drainage system, which was necessary to protect against flooding that might result from the damage caused by the fire and changes to the topography due to subsequent fire-related erosion; $477,641 to fill in a streambed created by a past mudslide that had essentially destroyed the lower pasture; and $423,168 to remove dirt from and add new topsoil to pastures to restore the pastures to a condition suitable for horse grazing. These restoration costs were reasonably related to restoring the property to a condition similar to its condition when plaintiff previously lived there—that is, safe, habitable by plaintiff and his family, and suitable for use as a horse ranch. Moreover, there was substantial evidence that plaintiff had no meaningful alternative to restoration, as the property was unmarketable due to the damage caused by defendant. Accordingly, there was substantial evidence that a reasonable person in plaintiff's circumstances was justified in incurring the costs to restore the property, notwithstanding that the restoration costs substantially exceeded the property's value before the fire. (Cf. *Heninger, supra,* 101 Cal.App.3d at p. 866 [reasons for restoration were purely aesthetic, such that no reasonable person would incur restoration costs that far exceeded value of property]; *Allyn v. Boe* (1997) 87 Wn.App. 722 [943 P.2d 364, 371–372] [unreasonable to restore ornamental trees on two acres when restoration costs exceeded value of entire 10-acre parcel].)

Defendant argues that it presented evidence of less costly methods of restoration. In reaching its verdict, however, the jury implicitly rejected that evidence and defendant's arguments in that regard. Defendant's contentions on appeal essentially ask this court to reweigh that evidence and reconsider those arguments. That is not our function. Rather, we determine whether, after resolving all conflicts and drawing all inferences most favorably to the prevailing party, there is substantial evidence to support the jury's verdict. (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465 [46 Cal.Rptr.2d 427, 904 P.2d 834], disapproved on another ground in *Guz v.*

*Bechtel National, Inc.* (2000) 24 Cal.4th 317, 352, fn. 17 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042, 1052 [102 Cal.Rptr.2d 673].)

We conclude that there was substantial evidence that a person in plaintiff's position reasonably could choose to restore the property to its prefire condition and that the damages awarded by the jury reasonably were necessary for such restoration. Accordingly, the damage award was not unreasonable or excessive as a matter of law.

### B.   *Damages for Annoyance and Discomfort*

#### 1.   *Additional Background*

Prior to the damage trial, defendant moved in limine to exclude evidence that plaintiff suffered annoyance and discomfort damage on the ground that plaintiff did not occupy the property at the time the damage occurred. The trial court denied the motion. Defendant thereafter requested that the jury be instructed that to recover such damages, plaintiff had to be an occupant of the property. The trial court denied defendant's request. The trial court's instruction to the jury with respect to annoyance and discomfort damages made no reference to the requirement that plaintiff occupy the property to recover such damages.[3] Defendant asserts that the instruction constituted prejudicial error.

The facts relevant to whether plaintiff is entitled to damages for annoyance and discomfort are undisputed. Whether the uncontradicted facts permit plaintiff to recover such damages is a question of law that we review de novo. (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 891 [38 Cal.Rptr.3d 78] [when "the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered, our review is de novo . . ."].) Any error in the trial court's jury instruction is not prejudicial if the evidence supporting the jury's verdict was overwhelming or uncontradicted. (*People v. Southern Pacific Co., supra,* 139 Cal.App.3d at p. 638.) Based on the uncontradicted facts, we determine whether legally plaintiff occupied the property so as to be eligible for damages for annoyance and discomfort.

---

[3] The trial court instructed the jury, in relevant part: "[Plaintiff] may also recover damages that would reasonably compensate him for the discomfort, annoyance, inconvenience and mental anguish proximately caused by the Defendant's act of trespass. A prior jury has already found that the Defendant's conduct was an act of trespass. [¶] The amount of damages to be awarded for discomfort, annoyance, inconvenience and mental anguish, is left to the sound judgment and discretion of the jury based upon the evidence."

## 2.  No Right to Recover Damages for Annoyance and Discomfort

■ In *Kornoff v. Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265 [288 P.2d 507] (*Kornoff*), the California Supreme Court recognized that " 'an occupant of land may recover damages for annoyance and discomfort that would naturally ensue' " from a trespass on the plaintiff's land. (*Id.* at p. 272.) In this case, the evidence was undisputed that, when the fire and mudslides occurred, plaintiff was not residing at the property. At those times, the property was rented to tenants. Defendant argues that plaintiff is not entitled to recover damages for annoyance and discomfort because he did not "occupy" the property at the time of the damage. Defendant contends, in essence, that the term "occupant" is synonymous with "resident"—that is, only the person in immediate possession of the property, such as a resident owner or tenant, may recover annoyance and discomfort damages. Plaintiff, in contrast, argues that he "occupied" the property because he stored equipment and other personal property there.

The parties thus seem to agree that plaintiff is entitled to annoyance and discomfort damages only if he was an "occupant" of the property, and that "occupancy" necessarily entails some physical presence on the property. We agree with both propositions. The issue is thus whether plaintiff "occupied" the property by storing some personal property for purposes of recovering annoyance and discomfort damages. We conclude that he did not.

■ We do not question that a nonresident property owner may suffer mental or emotional distress from damage to his or her property. But annoyance and discomfort damages are distinct from general damages for mental and emotional distress. Annoyance and discomfort damages are intended to compensate a plaintiff for the loss of his or her peaceful occupation and enjoyment of the property. As the court explained in *Webster v. Boone* (Colo.Ct.App. 1999) 992 P.2d 1183, 1185–1186, "We recognize that annoyance and discomfort by their very nature include a mental or emotional component, and that some dictionary definitions of these terms include the concept of distress. Nevertheless, the 'annoyance and discomfort' for which damages may be recovered on nuisance and trespass claims generally refers to distress arising out of physical discomfort, irritation, or inconvenience caused by odors, pests, noise, and the like. *See* . . . *Burt v. Beautiful Savior Lutheran Church* [(Colo.Ct.App. 1990) 809 P.2d 1064] (damages on trespass claim included loss of use of basement and discomfort and annoyance caused by smell in the home following water damage); *Miller v. Carnation Co.*, 39 Colo.App. 1 [564 P.2d 127] (1977) (damages for annoyance and discomfort caused by flies and rodents from neighboring poultry ranch) . . . . [¶] Our cases have permitted recovery for annoyance and discomfort damages on nuisance and trespass claims while at the same time precluding recovery for

'pure' emotional distress. *See Slovek v. Board of County Commissioners*, 697 P.2d 781 (Colo.App.1984) (holding that damages for annoyance and discomfort were available on trespass claim, but that recovery for emotional distress was not available where there was no allegation of negligent infliction of emotional distress or outrageous conduct) . . . ; *Calvaresi v. National Development Co.*, 772 P.2d 640 (Colo.App.1988) (in action for tortious injury to land, plaintiffs were entitled to put on evidence to establish discomfort, annoyance, physical illness, and loss of use and enjoyment of property, but were not entitled to recover damages for emotional distress)." (Citations omitted.)

This view is consistent with the Supreme Court's holding in *Kornoff, supra*, 45 Cal.2d 265. In that case, the plaintiffs were the owners and occupants of a property on which they both resided and operated a planing mill. (*Id.* at p. 266.) The defendant operated a cotton ginning mill, which caused the "lawns, flowers, shrubs, window screens, hedges and furniture" on the plaintiffs' property to be "for approximately six months of each year, covered with a thick coating of dust and lint and ginning waste." (*Id.* at p. 273.) The defendant's trespass, the court noted, was not of "the type to cause fright or shock or even physical illness," but it nevertheless caused the plaintiffs "much . . . discomfort." (*Ibid.*) Because such annoyance and discomfort was the natural and proximate result of the defendant's trespass, the plaintiffs were entitled to compensation, even though they had suffered no physical injury. (*Id.* at pp. 272–273.)

Limiting annoyance and discomfort damages to the immediate and personal possessor of property is consistent with the authorities. In *Kornoff*, for example, the California Supreme Court relied on the Restatement Second of Torts, section 929. (*Kornoff, supra*, 45 Cal.2d at p. 273.) That section provides, in relevant part, "(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for [¶] . . . [¶] (c) discomfort and annoyance to him as an occupant." (See also *Armitage v. Decker, supra*, 218 Cal.App.3d at pp. 905–906.) The Restatement commentary explains: "Discomfort and annoyance to an *occupant* of the land and to the *members of the household* are distinct grounds of compensation for which in ordinary cases the *person in possession* is allowed to recover in addition to the harm to his proprietary interests. . . . The *owner of land who is not an occupant is not entitled to recover for these harms* except as they may have affected the rental value of his land." (Rest.2d Torts, *supra*, § 929, com. e, pp. 546–547, italics added.) The references to the "occupant" and to the "members of the household" suggest residency, as does the express exclusion of nonresident owners from the class of persons entitled to recover for annoyance and discomfort. It thus appears that, consistent with defendant's position, the

drafters of the Restatement considered the "occupant" to be a person who is in immediate personal possession of the property.

California cases upholding an award of annoyance and discomfort damages have involved a plaintiff who was in immediate possession of the property as a resident or commercial tenant. (*Acadia, California, Ltd. v. Herbert* (1960) 54 Cal.2d 328, 332, 337–338 [5 Cal.Rptr. 686, 353 P.2d 294]; *Kornoff, supra,* 45 Cal.2d at p. 272; *Herzog v. Grosso* (1953) 41 Cal.2d 219, 222, 225–226 [259 P.2d 429]; *Armitage v. Decker, supra,* 218 Cal.App.3d at pp. 898, 905–906; see *Anderson v. Souza* (1952) 38 Cal.2d 825, 829–830, 833 [243 P.2d 497]; *Judson v. Los Angeles Suburban Gas Co.* (1910) 157 Cal. 168, 169–170, 172 [106 P. 581] [nuisance claim]; *Alonso v. Hills* (1950) 95 Cal.App.2d 778, 780, 787–788 [214 P.2d 50]; see also *Hassoldt v. Patrick Media Group, Inc., supra,* 84 Cal.App.4th at pp. 157, 172 [dictum] [plaintiffs operated preschool on property].) We are aware of no California case upholding an award of annoyance and discomfort damages to a plaintiff who was not personally in immediate possession of the property.

Appellate courts in other jurisdictions also have permitted the recovery of annoyance and discomfort damages. All of the cases of which we are aware involved a plaintiff who was in immediate personal possession of the property. (See, e.g., *Felton Oil Co., L.L.C. v. Gee* (2004) 357 Ark. 421 [182 S.W.3d 72, 76]; *Gallagher v. Grant-Lafayette Elec. Co-op.* (2001) 2001 WI App 276 [249 Wis.2d 115, 637 N.W.2d 80, 90–91]; *Lanier v. Burnette* (2000) 245 Ga.App. 566 [538 S.E.2d 476, 480] [damages for annoyance and discomfort for " 'wrongful interference with the comfortable enjoyment of property by a person in possession' "]; *Hawkins v. Scituate Oil Co.* (R.I. 1999) 723 A.2d 771, 772–773; *Ayers v. Jackson Tp.* (1987) 106 N.J. 557 [525 A.2d 287, 294]; see *Webster v. Boone, supra,* 992 P.2d at p. 1186; *Banford v. Aldrich Chem. Co.* (2008) 180 Ohio App. 3d 107 [2008 Ohio 6837, 904 N.E.2d 582, 592–601]; *Weld County Bd. of County Com'rs v. Slovek, supra,* 723 P.2d at pp. 1311, 1318 [one of several co-owners resided on property; the court reserved the question whether nonresident co-owners also could recover annoyance and discomfort damages]; *French v. Ralph E. Moore, Inc.* (1983) 203 Mont. 327 [661 P.2d 844, 845, 848] [annoyance and discomfort damages available "where the claim is that the defendant has interfered with the use and enjoyment of plaintiff's land"]; *Edwards v. Talent Irrigation Dist.* (1977) 280 Or. 307 [570 P.2d 1169, 1169–1170]; *Pollard v. Land West, Inc.* (1974) 96 Idaho 274 [526 P.2d 1110, 1112, 1115]; *City of New Cordell v. Lowe* (1963) 1963 OK 265 [389 P.2d 103, 104, 107]; *Riblet v. Spokane-Portland Cement Company* (1954) 45 Wn.2d 346 [274 P.2d 574, 578]; see also *Nichols v. City of Evansdale* (Iowa 2004) 687 N.W.2d 562, 573, fn. 2 [court denied annoyance and discomfort damages to nonoccupant property owners who were not in immediate personal possession of the property].) Defendant's position is consistent with both the existing case law and the rule

articulated in the Restatement Second of Torts. (See 1 Stein on Personal Injury Damages (3d ed. 1997) § 5.63, p. 5-129 ["It is also equally clear that damages for annoyance and discomfort are only available to residents or occupants of the property"]; but cf. *Weld County Bd. of County Com'rs v. Slovek, supra*, 723 P.2d at p. 1318 [dictum noting that a rule denying nonoccupant owners recovery for annoyance and discomfort "may not bear scrutiny in the proper case"].)

■ Although the storage of personal property entails some use of the premises and implies that plaintiff retained some possessory interest, the foregoing discussion demonstrates that the nature of the injury compensated by annoyance and discomfort damages involves some personal effect that arises from the plaintiff's personal, physical presence on the premises. Furthermore, the notion that storage of personal property on the premises constitutes "occupancy" is not consistent with the general understanding of that term. The term "occupant" has "historically been used in legal writing to denote 'one who takes possession of property.' " (Garner, A Dict. of Modern Legal Usage (2d ed. 1995) p. 612, col. 1.) Black's Law Dictionary defines an occupant as "[o]ne who has possessory rights in . . . certain property or premises." (Black's Law Dict. (9th ed. 2009) p. 1184, col. 1.) In common parlance, to "occupy" means, as relevant here, "to reside in as an owner or tenant." (Webster's 3d New Internat. Dict. (2002) p. 1561, col. 1.)

■ Accordingly, we hold that a nonresident property owner who merely stores personal property on the premises is not entitled to recover annoyance and discomfort damages from a trespass. Plaintiff was adequately compensated for damage to the property's habitability by the jury's award of $99,000 for lost rental income. The trial court thus erred in awarding annoyance and discomfort damages to plaintiff in this case.

### C. *Tree Damage Multiplier Pursuant to Civil Code Section 3346*

The jury awarded plaintiff $375,000 for damage to trees on the property. The trial court doubled that award pursuant to Civil Code section 3346, subdivision (a) (section 3346). Defendant argues that the trial court erred in doubling the tree damage pursuant to section 3346 because, as the Court of Appeal held in *Gould v. Madonna* (1970) 5 Cal.App.3d 404, 408 [85 Cal.Rptr. 457] (*Gould*), that section does not apply to negligently caused fires because fire damage is governed by Health and Safety Code section 13007 (section 13007). The trial court refused to follow *Gould* on the grounds that the

decision was both distinguishable and wrongly decided.[4] Unlike the court in *Gould*, we conclude that the plain language of section 3346 mandates the recovery of double tree damages in this case.

We review issues of statutory interpretation de novo. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].) "Our primary duty when interpreting a statute is to ' "determine and effectuate" ' the Legislature's intent. [Citation.] To that end, our first task is to examine the words of the statute, giving them a commonsense meaning. [Citation.] If the language is clear and unambiguous, the inquiry ends. [Citation.] However, a statute's language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Van Horn v. Watson* (2008) 45 Cal.4th 322, 326 [86 Cal.Rptr.3d 350, 197 P.3d 164], fn. omitted.)

At the outset, we note that it is now established that the spread of a negligently set fire to the land of another constitutes a trespass. (See *Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1305–1307 [58 Cal.Rptr.2d 303] (*Elton*).) Defendant does not argue otherwise. *Gould, supra,* 5 Cal.App.3d 404 was decided more than 20 years before the decision in *Elton*. Accordingly, to the extent the court in *Gould* based its conclusion on the fact that no prior case had held that the spread of a fire could be a trespass (*id.* at p. 406), that factor no longer applies.

Employing the settled rules of statutory interpretation, we examine the language of the two statutes at issue. (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 [76 Cal.Rptr.3d 483, 182 P.3d 1027].) Section 13007 generally concerns fire damage caused to the property of another. That section provides, "Any person who personally or through another wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire." Section 3346, on the other hand, specifically concerns damage to trees caused by trespass. That section provides, in relevant part, "For wrongful injuries to . . . trees . . . upon the land of another, . . . the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by

---

[4] To the extent *Gould, supra,* 5 Cal.App.3d 404 applied, basic principles of stare decisis required the trial court to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Any error in this regard was harmless in view of our discussion.

whose direction the act was done, the measure of damages shall be twice the sum as would compensate for the actual detriment . . . ." (§ 3346, subd. (a).)

Based on their plain language, these statutes are easily harmonized. Under section 13007, a tortfeasor generally is liable to the owner of property for damage caused by a negligently set fire. "[T]he statute places no restrictions on the type of property damage that is compensable." (*McKay v. State of California* (1992) 8 Cal.App.4th 937, 940 [10 Cal.Rptr.2d 771].) Such damages might include, for example, damage to structures, to movable personal property, to soil, or to undergrowth; damages may even include such elements as the lost profits of a business damaged by fire. (See, e.g., *Reid & Sibell v. Gilmore & Edwards Co.* (1955) 134 Cal.App.2d 60, 62–63 [285 P.2d 364] [goods]; *McKay v. State of California, supra,* 8 Cal.App.4th at pp. 939–940 [lost profits].) If the fire also damages trees—that is, causes "injuries to . . . trees . . . upon the land of another" (§ 3346, subd. (a))—then the actual damages recoverable under section 13007 may be doubled (for negligently caused fires) or trebled (for fires intended to spread to the plaintiff's property) pursuant to section 3346.

We question the reasoning in *Gould, supra,* 5 Cal.App.3d 404, which reasoning is adopted by defendant. In that case, a highway contractor's employee negligently permitted a brush fire to spread onto the plaintiff's property. The fire damaged the plaintiff's trees in the amount of $51,500. (*Id.* at p. 406.) The Court of Appeal held that the tree damage could not be doubled under section 3346, basing its decision on a comparative historical analysis of sections 3346 and 13007. (5 Cal.App.3d at pp. 406–408.)

The court reasoned that, until 1931, Civil Code section 3346, subdivision (a) and former Political Code section 3344 both provided that a person who negligently allowed a fire to extend beyond his own land was liable in treble damages to the injured party. (*Gould, supra,* 5 Cal.App.3d at p. 406.) In 1931, both of those sections were repealed and a new statute was enacted that, as stated by the court, "provided for actual damages caused by negligently setting or allowing fires to escape . . . ." (*Ibid.*) In 1953, the Legislature enacted section 13007, which provided for the recovery of " 'any damages to the property caused by the fire,' " but did not include a damage multiplier. (5 Cal.App.3d at p. 407.) The court stated that the purpose of section 13007 and its predecessors was "to prevent fires from destroying timber, grass and other property . . . ." (5 Cal.App.3d at p. 407.)

In 1957, the Legislature enacted section 3346, providing for damage multipliers for wrongful injuries to trees on the land of another. (*Gould, supra,* 5 Cal.App.3d at p. 407.) The court stated, "The normal use of Civil Code section 3346 is in cases where timber has been cut from another's land, either

with or without knowledge that the cutting was wrongful. It has been suggested that the purpose of the statute is to educate blunderers (persons who mistake location of boundary lines) and to discourage rogues (persons who ignore boundary lines), to protect timber from being cut by others than the owner. [Citations.]" (*Id.* at p. 408.) "[S]tatutes like section 3346 are an expression of the policy of increasing the risks of timber appropriation to the point of making it unprofitable." (*Ibid.*)

The court in *Gould, supra,* 5 Cal.App.3d at page 407, concluded that this history "demonstrates a legislative intention that only actual damages be recoverable for injury caused by negligently set fires." "[W]hile the statutes expressly dealing with damages caused by fires were eliminating penalties or restricting recoverable damages to actual damages" (*ibid.*), the statute "dealing with 'wrongful injuries to timber, trees, or underwood' changed the measure of damages for casual and involuntary 'trespass' from 'actual detriment' . . . to twice the actual detriment as adopted in 1957." (*Ibid.*) Thus, "the Legislature has set up a statutory scheme concerning timber fires completely separate from the scheme to meet the situation of the cutting or other type of injury to timber." (*Ibid.*) The court concluded that section 3346 did not apply to fire damage due to a negligently caused fire. (*Gould,* at p. 408; see also *McKay v. State of California, supra,* 8 Cal.App.4th at pp. 939–940 [following *Gould* without independent analysis].)

■ The fundamental problem with the decision in *Gould, supra,* 5 Cal.App.3d 404—quite apart from its speculation and assumptions as to the intent of the Legislature—is that the court essentially ignored the *best* indicator of the Legislature's intent: the plain language of the statutes. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888 [80 Cal.Rptr.3d 690, 188 P.3d 629]; *City of Santa Monica v. Gonzalez, supra,* 43 Cal.4th at p. 919; *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1271 [135 Cal.Rptr.2d 654, 70 P.3d 1067]; *Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268 [121 Cal.Rptr.2d 203, 47 P.3d 1069].) "Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context. [Citation.] When statutory language is clear and unambiguous, ' "there is no need for construction and courts should not indulge in it." ' [Citation.]" (*Esberg v. Union Oil Co., supra,* 28 Cal.4th at p. 268.) "If the statutory language on its face answers the question, that answer is binding unless we conclude the language is ambiguous or it does not accurately reflect the Legislature's intent. [Citations.]" (*Palmer v. GTE California, Inc., supra,* 30 Cal.4th at p. 1271; accord, *Van Horn v. Watson, supra,* 45 Cal.4th at p. 326 ["If [the statutory] language is clear and unambiguous, the inquiry ends."]; *People v. Arias* (2008) 45 Cal.4th 169, 177 [85 Cal.Rptr.3d 1, 195 P.3d 103]; *Miklosy v. Regents of University of California, supra,* 44 Cal.4th at p. 888; *Beal Bank, SSB v. Arter & Hadden,*

*LLP* (2007) 42 Cal.4th 503, 508 [66 Cal.Rptr.3d 52, 167 P.3d 666]; *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 211 [64 Cal.Rptr.3d 210, 164 P.3d 630].)

■ The plain language of section 3346 is not ambiguous. The statute authorizes an award of double damages "[f]or wrongful injuries to . . . trees . . . upon the land of another, . . . where the trespass was casual or involuntary . . . ." (§ 3346, subd. (a).) Under any reasonable interpretation, fire damage constitutes an "injur[y]" to a tree. There is no dispute that the fire was a trespass (see *Elton, supra,* 50 Cal.App.4th at pp. 1305–1307), or that the trespass in this case was "casual or involuntary" within the meaning of section 3346.[5] When there is no ambiguity or absurdity on the face of the statute, we may not manufacture one by resort to the legislative history. (See *People v. Hagedorn* (2005) 127 Cal.App.4th 734, 743 [25 Cal.Rptr.3d 879] ["Courts generally resort to legislative history to *resolve* ambiguities, not to *create* them."].)[6] Accordingly, we conclude that the trial court properly awarded double damage for injury to plaintiff's trees proximately caused by the fire. (See *Baker v. Ramirez* (1987) 190 Cal.App.3d 1123, 1138 [235 Cal.Rptr. 857] [award of double damages mandatory]; *Drewry v. Welch* (1965) 236 Cal.App.2d 159, 181 [46 Cal.Rptr. 65] [same].)

### D. *Attorney Fees Pursuant to Code of Civil Procedure Section 1021.9*

Defendant argues the trial court erred in awarding plaintiff attorney fees pursuant to Code of Civil Procedure section 1021.9 (section 1021.9). That section provides, "In any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs, and in addition to any liability for damages imposed by law."

"Interpretation of a statute and its application to a given situation are matters of law to be determined by the court." (*Haworth v. Lira* (1991) 232

---

[5] "The phrase 'casual or involuntary' comes directly from the tree trespass statute in New York's Field Code of 1848. In the mid-nineteenth century, 'casual' meant 'casualty.' [Citations.] Casualty, in turn, meant 'accident or negligence' and contrasted with 'designedly and under a claim of right.' [Citation.]" (*Matanuska Elec. Ass'n, Inc. v. Weissler* (Alaska 1986) 723 P.2d 600, 606–607, fns. omitted.)

[6] Defendant does not argue that giving section 3346 a literal reading would result in absurd consequences, so as to indicate a "latent ambiguity" in the statutory language. (See *In re Michele D.* (2002) 29 Cal.4th 600, 606 [128 Cal.Rptr.2d 92, 59 P.3d 164]; *People v. Hagedorn, supra,* 127 Cal.App.4th at p. 743; *People v. Townsend* (1998) 62 Cal.App.4th 1390, 1395 [73 Cal.Rptr.2d 438].) Because the legislative history of section 3346 is not relevant to our resolution of the issue presented on appeal, we deny defendant's request for judicial notice of such materials. (*Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 873 [69 Cal.Rptr.2d 494].)

Cal.App.3d 1362, 1367 [284 Cal.Rptr. 62] (*Haworth*) [interpreting § 1021.9].) We review any finding of fact necessary for the application of the statute under the substantial evidence standard. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 [84 Cal.Rptr.3d 597, 194 P.3d 330]; *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

In *Haworth, supra,* 232 Cal.App.3d 1362, the plaintiffs sued their neighbor after the neighbor's dog injured the plaintiffs' horse. (*Id.* at p. 1365.) The plaintiffs prevailed at trial and sought an award of attorney fees pursuant to section 1021.9. (232 Cal.App.3d at p. 1365.) Evidence introduced at trial established that the plaintiffs' "property was in an area zoned as an 'equestrian district.' " (*Id.* at p. 1366.) When the injury occurred, there were two horse corrals, a hay barn, and an arena for exercising horses on the plaintiffs' property. (*Ibid.*) Additional evidence that horses and goats were born on the property showed that the land was used for breeding purposes. (*Id.* at pp. 1366–1367.)

The court held that the plaintiffs were entitled to their attorney fees under section 1021.9. (*Haworth, supra,* 232 Cal.App.3d at pp. 1371–1372.) The plain language of the statute, the court reasoned, "does not indicate that the attorney fee right only inures to persons who are engaged in the commercial livestock industry." (*Id.* at p. 1371.) Plaintiffs who use property to raise livestock for personal use also may recover attorney fees under the statute. The court noted that the plaintiffs "were experienced in horse husbandry"; plaintiffs had "purchased a mare in foal who gave birth . . . to a foal"; plaintiffs "intended to sell the colt after birth"; the horse "was bred to be a thoroughbred jumper"; "plaintiffs raised goats, geese, ducks, chickens, and dogs on the property"; "one of plaintiffs' goats gave birth to three kids . . ."; and "a new goat was being used for breeding purposes on the property." (*Id.* at pp. 1366–1367; cf. *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1375 [64 Cal.Rptr.2d 741] [§ 1021.9 was not intended to apply to urban backyard gardens].)

"Livestock" is defined as "animals of any kind kept or raised for use or pleasure." (Webster's 3d New Internat. Dict., *supra,* p. 1324, col. 3; see Black's Law Dict., *supra,* p. 1018, col. 2 ["Domestic animals and fowls that (1) are kept for profit or pleasure, (2) can normally be confined within boundaries without seriously impairing their utility, and (3) do not normally intrude on others' land in such a way as to harm the land or growing crops."].) A California statute defines "livestock" as "any cattle, sheep, swine, goat, or horse, mule, or other equine." (Civ. Code, § 3080, subd. (a); see *Jakubaitis v. Fischer* (1995) 33 Cal.App.4th 1601, 1603, fn. 3 [40 Cal.Rptr.2d 39]; see also *Humane Society of the United States v. State Bd. of Equalization*

(2007) 152 Cal.App.4th 349, 362 [61 Cal.Rptr.3d 277] [livestock includes, inter alia, " 'horses, rabbits [and] bees.' "]) Indeed, in another context, our Supreme Court referred to the "raising of those domestic animals usually classified as 'livestock,' and commonly raised on farms or ranches, such as horses . . . ." (*Krobitzsch v. Industrial Acc. Com.* (1919) 181 Cal. 541, 546 [185 P. 396]; see also *Boland v. Cecil* (1944) 65 Cal.App.2d Supp. 832, 837 [150 P.2d 819] [" 'Livestock' is defined by Webster's New International Dictionary, second edition, as 'Domestic animals used or raised on a farm, especially those kept for profit.' "].)

The evidence in this case established that the property was a rural horse property zoned for agricultural use.[7] In the past, the property had been used to breed a variety of animals, including birds, dogs and horses, and for a period plaintiff raised hogs and chickens on the property. The property had substantial facilities for horses, including stud barns and tack buildings. The property was advertised to tenants as being acceptable for "livestock-type purposes," and most of the tenants had maintained horses or other animals while residing on the property. The structures, location, zoning and past use of the property all support the inference that the property was intended for raising livestock.[8] There was thus substantial evidence to support the trial court's finding that plaintiff intended to use the property for livestock purposes. Moreover, the trial court's judgment is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].) " 'Appellate courts . . . if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding . . . .' " (*Brewer v. Simpson* (1960) 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289].)

Defendant contends that the property was not under cultivation or being used for raising livestock at the time of the fire, and that evidence showing past use of the property does not satisfy the requirements of section 1021.9. But there is no requirement in the statute that the property be used at the time of the wrong for raising livestock—the statute provides that the property may be "intended" for such use. That plaintiff used the property for livestock purposes in the past was probative of plaintiff's intended use.

---

[7] Pursuant to the applicable zoning provision, property zoned for agricultural use may be used, inter alia, for "[t]he raising of horses and other equine, cattle, sheep, goats, alpacas, and llamas, including the breeding and training of such animals." (L.A. County Code, § 22.24.070, subd. B.) This provision suggests "raising" is a broad term that includes "breeding" and "training" but does not exclude maintaining or boarding.

[8] Because of the past uses of the property, the livestock-related structures present on the property and plaintiff's intended use of the property, we need not determine at what point the possession of animals in a rural setting qualifies as "raising" livestock.

Defendant further asserts that "boarding" horses is not the same as "raising" livestock. But there was substantial evidence that livestock—including birds, dogs and horses—had been bred on the property in the past, and the nature of the property and its improvements made the property suitable for such uses in the future. Accordingly, we need not reach the issue of when "boarding" becomes "raising" (see fn. 8, *post*), because there was substantial evidence in this case that defendant intended to "raise" livestock on the property. The trial court was justified in awarding attorney fees.

## DISPOSITION

The judgment is reversed insofar as it awarded plaintiff $543,000 in damages for annoyance and discomfort. In all other respects, the judgment is affirmed. No costs are awarded.

Turner, P. J., and Armstrong, J., concurred.