THOMPSON & FORD LUMBER CO. v. DILLINGHAM et al.

(Circuit Court of Appeals, Fifth Circuit. June 5, 1915.)

No. 2589.

1. VENDOR AND PURCHASER ⬤⟿231—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE OF ADVERSE CLAIMS.

The omission from an abstract of title, procured and furnished by a vendor, of any reference to the records of judicial proceedings by which the title might be affected, is sufficient to put an experienced lawyer representing the prospective purchaser on inquiry as to such records, and to charge the purchaser with notice of what they would have disclosed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. ⬤⟿231.]

2. VENDOR AND PURCHASER ⬤⟿229—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE OF ADVERSE CLAIMS.

One who executes a contract giving an option for the purchase of lands is to be regarded as the vendor in such sense as to put the purchaser on inquiry as to his relation to the title, although he afterward conveys to others, who execute the deeds in fulfillment of the option contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig. ⬤⟿229.]

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Suit in equity by Chas. Dillingham, receiver of the Houston Oil Company of Texas, and others, against the Thompson & Ford Lumber Company. Decree for complainants, and defendant appeals. Affirmed.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Wm. A. Vinson, of Houston, Tex. (Jonathan Lane, L. A. Carlton, and E. W. Townes, all of Houston, Tex., on the brief), for appellant.

H. O. Head, of Sherman, Tex., and Thomas M. Kennerly, of Houston, Tex. (Oswald S. Parker, of Houston, Tex., and J. R. Davenport, on the brief), for appellees.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge. We are of the opinion that the evidence adduced before the special master fully supported the conclusion reached by him, and sustained by the District Court, that the appellant was not, as a bona fide purchaser without notice of the claim asserted in the suit, or as a vendee deraigning title through such a purchaser, entitled to be protected against that claim. The deeds disclosing the claim asserted by the suit were of record at the time the appellant made its purchase, and, under the circumstances of its purchase, it could not be entitled to protection against that claim unless it maintained its contention that its vendor, the Kelly Land & Lumber Company, was a bona fide purchaser without notice. If the testimony is consistent with the master's finding against this contention, his report "must be treated as unassailable." Houston Oil Co. of Texas v. Wilhelm, 182 Fed. 474, 104 C. C. A. 618. Many circumstances disclosed by the evidence are adverted to by the master in his report, and their cumulative probative effect was relied upon by him as furnishing support for the conclusions he reached. We do not deem it necessary to make mention of more than one of the groups of circumstances so relied upon.

Some time during the summer of 1905 W. J. Townsend, for himself and associates, took from C. M. Votaw an option for the purchase of the lands in question—more than 17,000 acres—and he and his associates organized the Kelly Land & Lumber Company with the view of exercising that option and having the lands conveyed to that company. While Townsend and others who were associated with him in the contemplated venture were making investigations to determine whether the option would be exercised, and up to within a few days of September 2, 1905, the date of the formal execution of an instrument by which Votaw sold and conveyed the land to Townsend and his associates, and also the date of a number of deeds conveying the several parcels into which the land was subdivided, executed by Votaw and others at his instance to the Kelly Land & Lumber Company, or to grantees who took and held in trust for it, there was pending in a court of record of a county in which a considerable part of the land lay a suit instituted by Votaw against John H. Kirby, the Kirby Lumber Company, and the Houston Oil Company of Texas, the papers in which distinctly disclosed the existence of the claim which is asserted in the suit at bar. To Townsend, who was a lawyer of extensive experience in dealing with land titles and versed in the law applicable to the examination of them, was exclusively committed the task of examining and passing upon the titles to the land. For a long period, and until about the time the properties of John H. Kirby, of the Kirby Lumber Company, and

of the Houston Oil Company of Texas were, under court proceedings which were still pending, placed in the hands of receivers, Votaw was the land commissioner of John H. Kirby, of the Kirby Lumber Company, and of the Houston Oil Company of Texas—each well known to be or to have been the owner of vast tracts of land or the timber thereon—and had complete charge and possession of everything connected with the title to their lands and timber. The personal and business relations existing between Townsend and Votaw were intimate and of long standing, and Townsend was not ignorant of Votaw's confidential relations with the land titles of the parties whose employé he had been.

[1] According to Townsend's own version of his examination of the titles, he was content to rely on abstracts procured and furnished by Votaw. The abstracts so furnished of the titles to the lands in the county in which the suit above mentioned was pending did not indicate that any examination at all had been made of the court records of that county. It may well be inferred that a lawyer of Townsend's experience was fully aware that such an abstract, by reason of its failure to indicate any search of the records of judicial proceedings which might affect the titles in question, was not alone to be relied upon by one really seeking to ascertain the true condition of the titles. The omission from an abstract procured and furnished by a vendor of any reference to the records of judicial proceedings by which the title in question might be affected could itself be regarded as a circumstance likely to suggest to an experienced lawyer representing the prospective purchaser the advisability of a search of such records and the following up of any clue indicative of the existence of an adverse claim they might be found to disclose.

[2] Votaw was the vendor, and manifestly was dealt with as such by Townsend and his associates. In a court of equity he is not any the less to be regarded as the vendor because of his acts, which were disclosed to Townsend, in making conveyances to others and having them, only a few days later, in turn to convey to the Kelly Land & Lumber Company. His contract with Townsend and associates made him a vendor. This was enough to put the vendees on inquiry as to his relation to the titles. Gimon v. Davis, 36 Ala. 589; Creel v. Keith, 148 Ala. 233, 41 South. 780. The information which the papers in the suit above referred to disclosed could not well have been escaped, if there was any examination at all of the records of judicial proceedings in that county to which Votaw was a party. In view of Townsend's intimacy with Votaw and his knowledge of the latter's previous relations, it is not to be supposed that he could have failed to be impressed by the significance of the pendency of litigation between Votaw and the three parties whose land titles had been in his charge. Manifestly that litigation was still pending while such investigation as Townsend made of the titles to the land was in progress. The circumstance did not lose its significance by the dismissal of the suit at such a time as, in the light of facts of which Townsend was aware, indicated that this was done in contemplation of the conveyance of the lands to Townsend and his associates. It well could be inferred from the evidence, either that Townsend was aware of the pendency, after the option was taken,

while the titles were under investigation, and up to within a few days of the consummation of the sale, of the suit above mentioned, or that he collusively or inexcusably abstained from inquiry for the purpose of avoiding information of facts affecting the validity of the titles proposed to be conveyed; in other words, that he either investigated and learned the facts which investigation would have disclosed, or that he elected to avoid sources of probable information as to the title of which he could not have been in ignorance. Either of these inferences would justify the further conclusion that neither Townsend and his associates nor the corporation they organized were entitled to protection against a claim the existence of which would have been ascertained if there had been such an inquiry into the title of their vendor as must have been made if reasonable diligence and good faith had been exercised.

The special master's recommendation was that the appellant be charged with the manufactured value of the timber cut by it after the institution of the suit. As the timber was cut after there was unequivocal notice of the adverse claim, and by a party which failed to sustain its contention that it was an innocent purchaser, it may be that the court would not have been chargeable with error if it had followed the master's recommendation. Wooden-Ware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230; Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164. This question, however, is not presented for decision, as the court did not, in its award of damages, follow the recommendation of the master, but awarded an amount considerably less than that recommended by him, and the party adversely affected by this action of the court is not complaining of it. The court awarded $5 per thousand feet as damages for timber cut after the bringing of the suit. We do not discover from the record how this particular figure was arrived at.

Counsel for the appellant contend that the amount awarded was more than that of the profit which the evidence showed was realized by the appellant from the timber so cut. This contention is sought to be supported by an estimate of the profits, arrived at by deducting from the sum of the prices realized from the lumber made from the timber the sum of the cost of its manufacture and adding interest on the amount so ascertained. In the calculation submitted in the argument of the counsel the fact is overlooked or ignored that in the cost of manufacture shown by the evidence which is relied on the stumpage was included as an item of outlay. The appellant has not made that outlay, and, as the timber cut belonged to the appellee, the latter is entitled to have its reasonable value included in the award of damages. The result of adding the amount of that item, as it is shown by the evidence, to the amount shown by the estimate submitted by the counsel for the appellant, is an amount greater than that which the court awarded. The appellant could not have sustained a complaint as to the amount awarded as damages if that amount had been determined by charging the appellant with the prices received by it for the lumber made from the timber so cut, less the cost of the conversion of the timber cut into lumber, as the appellant is not entitled to make a profit

out of what amounted to a trespass. Conn v. Rice, 204 Fed. 181, 122 C. C. A. 417. It follows that it cannot sustain a complaint against an award of damages which is even less in amount than it would have been if it had been made on the basis just mentioned. The record does not make it appear that the amount awarded as damages for timber cut by the appellant after the suit was brought was excessive.

The conclusion is that the record does not show the commission of any error which requires the reversal of the decree appealed from. It follows that that decree should be affirmed; and it is so ordered.