### GREEN v. SOUTHERN TIMBER CO.

(District Court, S. D. Georgia. July 25, 1923.)

1. **Courts ☞99(1)—Judgment granting interlocutory injunction is law of the case, when not excepted to.**

    Construction of reservation in timber deed on application for interlocutory injunction to restrain cutting was the law of the case, when judgment granting the injunction was not excepted to.

2. **Assignments ☞24(1)—Purchaser, to whom vendor assigned right of action, entitled to sue for cutting of timber between date of contract and date of deed.**

    Purchaser of land, to whom grantors assigned all rights of action for damage for trespass by persons cutting timber, was authorized to sue for cutting of timber between date he contracted to buy the land and date deed was delivered; timber having been removed from land after date of the deed.

3. **Trespass ☞56—Punitive damages not recoverable for cutting timber under bona fide misconstruction of deed.**

    Where grantee under timber deed cut timber reserved under bona fide misconstruction of ambiguous reservation, and not willfully, punitive damages were not recoverable.

4. **Trespass ☞52—One cutting timber in good faith should forego profit.**

    Though grantee under timber deed cut reserved timber in good faith, under misconstruction of the reservation, he was a trespasser, and should forego any profit on the timber. To compute damages on stumpage basis

would disregard owner's unwillingness to sell, and permit the trespasser to retain his profit, and, therefore, cannot be adopted.

5. **Trespass** ⊜⇒52—Cost of tramroad construction, general expenses, and depreciation excluded in determining cost of cutting timber.

In computing cost of cutting, skidding, loading, and transporting timber, which was cut wrongfully under misconstruction of timber deed, for purpose of determining the damage, proportionate part of cost of tramroad construction, general expenses, and depreciation of equipment *held* to be excluded.

At Law. Action by Gay Green against the Southern Timber Company. Judgment for plaintiff.

H. Wiley Johnson, of Savannah, Ga., for plaintiff.
Adams & Adams, Savannah, Ga., for defendant.

BARRETT, District Judge. The Southern Timber Company acquired the right to cut timber over a large tract of land abutting on Midway river, which is practically an inlet from the sea, and affected by tides, subject to the following reservation:

"Excepting and reserving, however, from said granted and leased premises the timber or trees standing within 150 feet of the margin of the uplands, it being understood and agreed that said excepted timber or trees is not to be turpentined or cut, and that no railroad or tramroad through the said margin of timber shall be built or run up and down said margin, except directly through the same to a place of landing wherever necessary. The intent and meaning of this reservation or exception is to save and except such standing timber and trees as stand within 150 feet of the river front; this margin being reserved for the purpose of protecting the bluff or river frontage from the encroachment of the tides."

Along the river was a considerable frontage of bluff, and much more of marsh. Gay Green brought his complaint against the Southern Timber Company, averring that he was the owner of the land upon which such timber was standing, and was the assignee of all rights of action arising from the trespass of said company on said land; that said company had cut and used timber from said land contrary to such reservation; and prayed that further cutting should be enjoined and damages recovered.

[1] Upon the hearing of the interlocutory injunction this reservation was construed by Judge Beverly D. Evans (and his judgment, standing unexcepted to, is the law of this case, whatever view I might otherwise entertain). That construction is that it reserves "all trees and timber standing within 150 feet from the line where the water (whether on marsh land or otherwise) touches the upland." Green v. Southern Timber Co. (D. C.) 266 Fed. 238.

[2] 1. Green contracted to purchase the land on which this timber was located on January 29, 1920, and paid $500 on account. The deed to him was not delivered until March 11, 1920. Between these dates the timber in said margin was cut by defendant, but it was not removed from the land until after March 11, 1920. On May 18, 1920, before this complaint was filed, the grantors in the deed to Green assigned to him "all rights of action for damage thereto [to said land] or tres-

pass thereon by the Southern Timber Company or any other person or corporation." Green was therefore authorized to bring this complaint in his own name. Sullivan v. Curling, 149 Ga. 96 (1), 99 S. E. 533, 5 A. L. R. 124; Ambler v. Eppinger, 137 U. S. 480, 11 Sup. Ct. 173, 34 L. Ed. 765; Conn v. Rice, 204 Fed. 181 (1), 122 C. C. A. 417 (5th C. C. A.).

[3] 2. My conclusion is that the defendant was not a willful trespasser. A statement at length of the reasons leading to this conclusion would be unprofitable. The ambiguity of the reservation as written reveals the possibility of its bona fide misconstruction, and it is clearly shown that the defendant urged an inspection of the premises and instruction as to the correct interpretation of the reservation. This course was inconsistent with bad faith. Therefore no punitive damages are recoverable.

[4] 3. Reckoning the damage on the basis of stumpage would be to disregard the unwillingness of the owner to sell. The defendant was a trespasser, even though unwittingly. Surely he should be content to forego any profit. Conn v. Rice, 204 Fed. 181 (3), 122 C. C. A. 417; Thompson & Ford Lumber Co. v. Dillingham, 223 Fed. 1000, 1003, 1004 (5th C. C. A.) 139 C. C. A. 376.

After considering all of the cruises introduced in evidence, and with the full appreciation that certainty of accuracy does not attach to any one, I have concluded to adopt Jasspon's as the most satisfactory, and to adopt his second line estimate. This shows a total, exclusive of the hammocks, of 290,970 feet, and the hammocks 50,740 feet, making a total of 341,710 feet.

[5] According to the tesitmony of Mr. E. V. Dunlevie, the average cost for the year 1920 of cutting, skidding, loading, and transporting timber was $12.44 per thousand feet. In this estimate is included the cost of tramroad construction, $3.85, general expense, 92 cents, and depreciation of equipment, 34 cents. These items I think should not be included in this case. Thus the average cost would be reduced to $7.33. He testifies that the average price of logs sold by the Southern Timber Company during 1920 was $16.95 per thousand feet, delivered at Allenhurst, Ga. While it is practically certain that the prices were higher at the time this timber was felled than the average prices of the year, there is no evidence to justify a conclusion as to just what was this difference, and I have therefore adopted this average. Deducting the $7.33 cost from the sale price of $16.95 leaves $9.62, which applied to Jasspon's figures, above adopted, produces a liability of $3,-287.25. This should bear interest at 7 per cent. per annum from March 11, 1920.

A judgment will be rendered accordingly.