# IN THE SUPREME COURT OF CALIFORNIA

VINCENT E. SCHOLES,
Plaintiff and Appellant,
v.
LAMBIRTH TRUCKING COMPANY,
Defendant and Respondent.

S241825

Third Appellate District
C070770

Colusa County Superior Court
CV23759

February 20, 2020

Justice Cuéllar authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Liu, Kruger, Groban, Aronson,* and Banke** concurred.

---

\* Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

\** Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

SCHOLES v. LAMBIRTH TRUCKING COMPANY

S241825


Opinion of the Court by Cuéllar, J.


This case arises from a pair of entwined risks all too familiar to Californians: fire, and what happens when fire spreads. Civil Code section 3346 provides enhanced damages to plaintiffs suffering "wrongful injuries" (*id.*, subd. (a)) to timber, trees, or underwood.[1] The statute generally provides for treble (triple) damages, but only double damages "where the trespass was casual or involuntary" and only actual damages in other specified factual scenarios. (*Ibid.*) The relevant statute of limitations where a plaintiff properly seeks such damages is five years (*id.*, subd. (c)). But can section 3346 be used at all to sue a person who inadvertently lets fire spread to someone else's property?

Plaintiff Vincent Scholes alleges that defendant Lambirth Trucking Company (Lambirth) negligently allowed a fire to spread from Lambirth's property to Scholes's property, harming some of Scholes's trees. This claim would be untimely under the three-year statute of limitations that applies to ordinary trespass, but Scholes contends that section 3346's enhanced damages and five-year statute of limitations applies insofar as he seeks damages from injury to those trees. In contrast, Lambirth argues that section 3346 does not apply to property damage from a fire negligently allowed to escape from the defendant's property. Instead, Lambirth asserts, the fire liability provisions found in Health and Safety Code sections

_____

[1]     All unlabeled statutory references are to the Civil Code.

1

13007, 13008, and 13009 govern Scholes's claim and only allow recovery of actual damages from an escaping fire. Those provisions state that a person responsible for the spread of fire is liable for "any damages" (Health & Saf. Code, § 13007) and fire suppression costs, and do not provide an extended statute of limitations.

What we conclude is that the five-year statute of limitations and heightened damages provisions of section 3346 are inapplicable to damages to timber, trees, or underwood from negligently escaping fires. Section 3346, subdivision (a) does not apply to all "injuries" to trees or all "injuries" arising out of common law trespasses. Instead, section 3346 is best read as a statute targeting "timber trespass" — the kind of direct, intentional injury to trees on the property of another that would be perpetrated by actions such as cutting down a neighbor's trees — and sets out a special scheme of graduated penalties aimed at deterring such trespass and any resulting misappropriation of timber. Harmful though the Lambirth fire is, this is not a punitive scheme that fits it. Because Scholes cannot rely on section 3346's extended statute of limitations and his complaint was otherwise untimely, we affirm the Court of Appeal's decision.

## I.

In 2003, Lambirth began operating a company making wood chips, sawdust, and products from rice hulls on the land next to Scholes's property. To make some of these soil enhancement products, Lambirth's company grinds wood. Some of this wood, along with rice hulls, blew onto Scholes's property over time. On May 12, 2007, there was a fire at Lambirth's business. Scholes soon complained to Lambirth about the wood

chips and rice hulls that had blown onto Scholes's property. Local authorities also warned Lambirth about storing these wood products. Lambirth began removing the wood chips and rice hulls on Scholes's property. But on May 21, 2007, another fire broke out on Lambirth's property — and in short order, it leapt onto Scholes's property.

On May 21, 2010, Scholes filed suit against Lambirth and its insurer, Financial Pacific Insurance Company (Financial Pacific). The initial complaint alleged lost use of property as well as general damages and property damages. A few months later, on January 24, 2011, Scholes filed a first amended complaint alleging damages to property, loss of crops, and lost use of property. Lambirth and Financial Pacific filed a motion for judgment on the pleadings and argued that Scholes failed to allege sufficient facts to state a cause of action. The trial court granted the motion with leave to amend.

Scholes filed a second amended complaint on August 9, 2011. It alleged that Lambirth trespassed by allowing wood chips and rice hulls to enter Scholes's property, which allowed the fire to spread to Scholes's property. Lambirth also failed to supply any water source, the complaint alleged, to suppress a fire that might ignite these materials. In October 2011, Scholes agreed to dismiss with prejudice the case against Financial Pacific as well as its officers and directors, leaving Lambirth as the sole remaining defendant. Lambirth filed a demurrer and argued that the statute of limitations barred Scholes's claim. The trial court granted the demurrer on statute of limitation grounds with leave to amend.

On November 15, 2011, Scholes filed a third amended complaint alleging three causes of action: general negligence

(what the Court of Appeal characterized as "negligent trespass"), intentional trespass, and strict liability. Under the first cause of action, this complaint alleged that "wood chips, sawdust, rice hulls, and other combustible material" accumulated on Lambirth's property, and that Lambirth "failed to either control or suppress" a fire, which "spread to the realty of [Scholes]" and "destroyed personal property, growing crops," motor vehicles, and other mechanical equipment. It also alleged damage to a walnut orchard and requested enhanced damages for the injury to the orchard under section 3346 and Code of Civil Procedure section 733. Section 3346, subdivision (a) provides treble or double damages for "wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof." Code of Civil Procedure section 733 similarly provides treble damages for malicious or willful cutting, carrying away, girdling, or "otherwise injur[ing]" timber or trees, but provides no special statute of limitations. Lambirth filed a demurrer and argued that Scholes's claims were barred by the statute of limitations, and also that Scholes failed to state a claim for intentional trespass or strict liability. The trial court granted the demurrer without leave to amend. Scholes appealed.

Scholes argued before the Court of Appeal that his third amended complaint was timely because: (1) Code of Civil Procedure section 338, subdivision (b) applies a three-year statute of limitations to an action for trespass upon or injury to real property; and (2) the second complaint, where Scholes first alleged such an action, related back to the original timely complaint. The Court of Appeal agreed that the three-year statute of limitations applied but concluded Scholes's amended complaint did not relate back. Alternatively, Scholes asserted

his first cause of action was subject to section 3346's extended five-year statute of limitations because it alleged damage to trees (§ 3346, subd. (c)). The Court of Appeal rejected this argument too, holding that section 3346 does not apply where the cause of the harm is the negligent spread of fire. In doing so, the court relied on *Gould v. Madonna* (1970) 5 Cal.App.3d 404 (*Gould*), which held that section 3346 does not apply to fire damage caused by negligence, and rejected the contrary decision in *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442 (*Kelly*). We granted review to decide whether section 3346 applies to fire damage.

## II.

Section 3346, located in the "Penal Damages" article of the Civil Code, provides the following: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant . . . had probable cause to believe that the land on which the trespass was committed was his own . . . , the measure of damages shall be twice the sum as would compensate for the actual detriment . . . ." (§ 3346, subd. (a).) The statute limits recovery to actual damages "where the wood was taken by the authority of highway officers for the purpose of repairing a public highway or bridge upon the land or adjoining it." (*Ibid.*) Subdivision (b) provides the same "for any trespass committed while acting in reliance upon a survey of boundary lines" by a licensed surveyor if "[t]he trespass was committed by a defendant who either himself procured, or whose principal, lessor, or immediate predecessor in title procured the

5

survey to be made." (*Id.*, subd. (b).) The Legislature originally enacted section 3346 when it adopted the Civil Code in 1872, borrowing from a draft New York Civil Code. (Civ. Code, former § 3346, repealed by Stats. 1957, ch. 2346, § 2, p. 4076; see *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1200; see also *Fulle v. Kanani* (2017) 7 Cal.App.5th 1305, 1310, fn. 2 (*Fulle*).)

To determine whether this provision encompasses negligent fire damage, we start with the statute's language and structure in order to "ascertain and effectuate the law's intended purpose." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246 (*Weatherford*); *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 ["Our primary goal is to determine and give effect to the underlying purpose of the law"]; *People v. Valencia* (2017) 3 Cal.5th 347, 357 [" '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose' "].) This inquiry requires us to start by considering the ordinary meaning of the statutory language, the language of related provisions, and the structure of the statutory scheme. (*Weatherford*, at p. 1246; see also *Larkin v. Workers' Compensation Appeals Bd.* (2015) 62 Cal.4th 152, 157-158.) If the language of a statutory provision remains unclear after we consider its terms, structure, and related statutory provisions, we may take account of extrinsic sources — such as legislative history. (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 156; see also *Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)

Also guiding our inquiry is the designation of section 3346's treble and double damages provisions as penal in nature — provisions our Courts of Appeal have construed strictly for more than 50 years. (See, e.g., *Fulle, supra*, 7 Cal.App.5th at p. 1316; *Drewry v. Welch* (1965) 236 Cal.App.2d 159, 172-173

(*Drewry*); *Ghera v. Sugar Pine Lumber Co.* (1964) 224 Cal.App.2d 88, 92.) At a minimum, we should interpret section 3346 to reach only conduct where fixed imposition of treble and double damages reasonably furthers the aims of punishment and deterrence. (See, e.g., *Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 ["the function of punitive damages is not served by an award which, in light of . . . the gravity of the particular act, exceeds the level necessary to properly punish and deter"].)

## A.

Two terms in section 3346 bear on whether the statute encompasses damage caused by negligently spread fires. The harm at issue must involve a "wrongful injury" to timber, trees, or underwood. (§ 3346, subd. (a).) And given the terms used to describe the separate penalties for which the statute provides, it also appears any actionable harm must involve or at least occur in connection with a "trespass." (*Ibid.* [requiring the award of treble damages for "*wrongful injuries* to timber, trees, or underwood" except that double damages apply "where the *trespass* was casual or involuntary" (italics added)].) The *Kelly* Court of Appeal held that the language of section 3346 is "not ambiguous" because "[u]nder any reasonable interpretation, fire damage constitutes an 'injur[y]' to a tree" and "[t]here is no dispute that the fire was a trespass . . . ." (*Kelly, supra,* 179 Cal.App.4th at p. 463.)

Contrary to *Kelly*, we find more elusive the type of wrongful injuries and trespasses to which section 3346 applies. The ordinary meaning of the word injury is broad and could conceivably apply, as Scholes suggests, to any injury — including fire damage. (See *Las Animas etc. Land Co. v. Fatjo*

(1908) 9 Cal.App. 318, 323, 319 [holding that it was "too clear for argument" that fire damage was an "injury to real property"].) But we do not interpret words in a vacuum. The most sensible way to understand the statute's pairing of "wrongful injuries to timber, trees, or underwood" with its reference to "the trespass" is as a limitation on the statute's scope, to cover only those injuries that necessarily involve some sort of trespass. (§ 3346, subd. (a).) Put differently, "trespass" — given its position in the statutory scheme — sheds light on which injuries to trees are best understood as "wrongful injuries" for purposes of section 3346.

But "trespass," too, can have a meaning that's broader or narrower. In certain contexts "trespass" serves as a general reference to unlawful harmful action affecting a person or property (see Bouvier's Law Dict. (14th ed. 1878) p. 608 ["Any unlawful act committed with violence, actual or implied, to the person, property, or rights of another"]) — though Scholes does not advance such a broad view. Instead, he contends that even if we interpret trespass in section 3346 to require the elements of a trespass cause of action, Lambirth's negligently spread fire still fits the bill. He points to *Coley v. Hecker* (1928) 206 Cal. 22 (*Coley*), where we held that " 'trespasses may be committed by consequential and indirect injuries as well as by direct and forcible injuries.' " (*Id.* at p. 28.) With any operative distinction between "direct" and "indirect" trespass long eliminated in California, Scholes views section 3346 as readily encompassing an injury to trees from the negligent trespassory intrusion of fire. (See *Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1307 (*Elton*) ["When negligently inflicted

with resulting actual damage, [an invasion by fire] may constitute a trespass"].)

Lambirth urges us to embrace the narrower construction adopted by the *Gould* court. Under this view, section 3346 refers not to the common law action of trespass but rather the kind of acts long thought of as "timber trespass" or "timber misappropriation" — essentially, intentionally severing or removing timber from another's land without the owner's consent. (*Gould, supra,* 5 Cal.App.3d at p. 408; see, e.g., *Fulle, supra,* 7 Cal.App.5th at p. 1310; *Drewry, supra,* 236 Cal.App.2d at p. 177.) Given the prevalence of timber trespass statutes at the time of the statute's enactment in 1872 (see generally 1 Kinney, Essentials of American Timber Law, ch. VIII (1917) (Kinney) [tracing the history of timber trespass legislation in America]), this too is a plausible interpretation of section 3346's language. (See *People v. Cruz* (1996) 13 Cal.4th 764, 775 (*Cruz*) ["The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment"].) And if this statutory provision is best understood as yet another timber trespass statute, that reading would in turn support a more limited understanding of "injury," whereby the term encompasses only the kinds of direct, intentional injuries performed to effectuate such removal.

We conclude that section 3346's requirements correspond to timber trespass — direct, intentional injuries to timber, trees, or underwood on the land of another — as the ill to which its scheme of penal damages applies. Preliminarily, we observe that the statute's structure is incongruous with consequential trespasses involving unintended entries like an out-of-control fire. Section 3346 provides that double, rather than treble,

damages would apply if the trespass was "casual or involuntary" or if the defendant had "probable cause" (*id.*, subd. (a)) to believe he or she owned the land, and awards only actual damages for situations in which the defendant enters the land under authority or "while acting in reliance upon a survey of boundary lines which improperly fixes the location of a boundary line." (*id.*, subd. (b)). The Legislature thus graduated penalties depending on the reasonableness of a breach of property lines: treble damages if the breach was made in bad faith; double damages if the breach was made based on reasonable belief of ownership or if the defendant crossed the property lines by accident; and single damages if the defendant took affirmative, but ultimately insufficient, steps to respect boundary lines by engaging a surveyor. Relying primarily on these considerations to determine damages makes the most sense if the defendant necessarily intends his presence on the land.[2] Accidental invasions like the spread of fire do not fit easily into this property-line-focused framework. If Scholes's interpretation prevailed, it's far from clear why the Legislature would vary damages according to culpability for a property line breach as opposed to the injuring act.

The statute's inclusion of "casual or involuntary" trespasses (§ 3346, subd. (a)) — before 1957, "casual *and*

---

[2]  "Presence" could mean the defendant's personal presence or presence through some agent or instrumentality. (See, e.g., *Jongeward v. BNSF R. Co.* (Wash. 2012) 278 P.3d 157, 166 (*Jongeward*) [" 'a person who stands at his or her fence line and intentionally sprays herbicide on a neighbor's trees' engages in conduct prohibited by the statute because the person commits a direct trespass and causes immediate injury to the plaintiff's trees"].) Our analysis applies to both scenarios.

involuntary" trespasses (former § 3346, italics added) — does not foreclose this interpretation. In the mid-19th century, " 'casual' " would have meant accidental or negligent as opposed to " 'designedly and under a claim of right.' " (*Matanuska Elec. Ass'n, Inc. v. Weissler* (Alaska 1986) 723 P.2d 600, 607.) A trespass might be "accidental" with respect to the trespasser's volition in entering the property or with respect to his or her intent to interfere with the possessory rights of another. (Cf. *Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1480-1481 [defendant was mistaken as to the wrongness of his acts but nevertheless "liable for an intentional entry" because he "inten[ded] to be at the place on the land where the trespass allegedly occurred"].) Courts have disagreed as to whether various timber trespass statutes contemplate one brand of accident or another, or both, when referring to casual or involuntary trespasses. (Compare *Matanuska, supra*, at p. 607 and *Wyatt v. Sweitz* (Or. 1997) 934 P.2d 544, 546 [" 'Casual or involuntary' . . . encompasses non-negligent, non-volitional trespass"] with *Jongeward, supra,* (2012) 278 P.3d at p. 166 ["Ultimately, the legislature enacted the timber trespass statute to deter specific conduct and punish a voluntary offender"] and *Whitaker v. McGee* (N.Y.App.Div. 1985) 111 A.D.2d 459, 461 (*Whitaker*).)

New York's experience is illuminating, particularly as California's 1872 Legislature found its inspiration for section 3346 in the laws of New York. Interpreting an analogous statute, New York courts concluded that "a trespass may be characterized as 'involuntary' where the trespasser acted in a good-faith reasonable belief in his right to harvest the trees." (*Whitaker, supra, 111 A.D.2d* at p. 461; see, e.g., *Braman v.*

*Rochester Gas & Elec. Corp.* (N.Y.App.Div. 1976) 54 A.D.2d 174, 176; *Greene v. Mindon Const. Corp.* (N.Y. 1959) 188 N.Y.S.2d 633, 635.) In context, then, we have reason to read "casual or involuntary" as remaining consistent with an interpretation of the statute reaching trespassers intentionally present on the land with negligence as to their right to be there — for example, due to mistakes about boundary lines — but not accidental entries like Lambirth's spreading fire. (§ 3346, subd. (a).) This interpretation of "casual or involuntary" (*ibid.*) fits seamlessly with the apparent purpose of the 1957 repeal and reenactment of section 3346, which increased the damages for casual trespasses from actual to double damages.

Although section 3346, subdivision (a) fails to define the "wrongful injuries" that must flow from the defendant's intentional entry onto the land, surrounding language elucidates that the injuries, too, must likely be the kind of direct, intentional acts involved in timber trespass. For starters, subdivision (a) mentions "removal" of the timber, trees, or underwood, and in its exception for officially authorized public highway repairs it presupposes that "the wood was taken." Notwithstanding the statute's listing of injuries and removal in the disjunctive (see § 3346, subd. (a)), the statute's discussion of injuries involving removal and severance suggests that reasonable legislators enacting this language would have understood "wrongful injuries" to encompass direct acts connected to and in furtherance of removal or severance. (*Ibid.*) This conclusion also fits our practice of construing words by taking account of the meaning of surrounding words. (See *People v. Prunty* (2015) 62 Cal.4th 59, 73 (*Prunty*).)

Even stronger evidence for this construction is evident in the relationship between section 3346 and Code of Civil Procedure section 733. The Legislature first enacted Code of Civil Procedure section 733 in 1851 (Stats. 1851, ch. 5, § 251, p. 92), codifying it in the 1872 Code of Civil Procedure at the same time as Civil Code section 3346 (see Code Comm., Revised Laws of the State of California (1871) pp. 176 & 566 (hereinafter Proposed Revised Laws (1871))). Code of Civil Procedure section 733 states the following: "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise *injures* any tree or timber on the land of another person[,] . . . without lawful authority, is liable to the owner of such land . . . for treble the amount of damages which may be assessed therefor, in a civil action, in any Court having jurisdiction." (Italics added.) The Legislature has not amended Code of Civil Procedure section 733 since its inception.

Because section 3346 and Code of Civil Procedure section 733 relate to the same subject, we construe them together and endeavor to give both consistent effect. (See, e.g., *Swall v. Anderson* (1943) 60 Cal.App.2d 825, 829 (*Swall*) ["As sections 733 of the Code of Civil Procedure and 3346 of the Civil Code relate to the same subject matter they must be construed together"]; *Drewry, supra,* 236 Cal.App.2d at p. 180 [reading these provisions together to find treble damages to be discretionary]; see also *City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 722 ["When code sections address the same matter or subject, 'we must construe them together as one statute' "].) The legislative history further underscores the close relationship. Both statutes trace back to a set of early

19th-century New York statutes with similar structure and language.  (See 2 N.Y. Rev. Stat. (1829) 338, §§ 1-3.)

We recognized long ago that Civil Code section 3346's tiered damages scheme "qualifie[s]" Code of Civil Procedure section 733's imposition of treble damages for the prohibited acts.  (*Stewart v. Sefton* (1895) 108 Cal. 197, 207 (*Stewart*).)  Thus read against Code of Civil Procedure section 733, section 3346 serves as a "measure of damages" (§ 3346, subd. (a)) for injuries that are legally wrongful under the former's particular trespass cause of action, rather than the measure of damages for *all* common law trespass causes of action.  Accordingly, we must construe "injuries" in section 3346, subdivision (a) as having the same meaning as "injures" in Code of Civil Procedure section 733.  In contrast to section 3346, subdivision (a)'s somewhat vague description of the "wrongful injuries" it covers, Code of Civil Procedure section 733 is more precise, prohibiting cutting down, carrying off, and girdling or otherwise injuring trees.  Cutting down, carrying off, and girdling all connote direct, intentional injuries.  This context suggests we should likewise limit "otherwise injure[]," as the final proscribed act to direct injuries, not any harm whatsoever.  (Code Civ. Proc., § 733; see *Prunty, supra,* 62 Cal.4th at p. 73 [under the *noscitur a sociis* canon, a word " 'is known by its associates' "].)  Consequential fire damage would therefore be excluded from the ambit of Code of Civil Procedure section 733.  *Jongeward*, *supra*, 278 P.3d 157, concluded the same when it construed a Washington statute substantially similar to Code of Civil Procedure section 733:  "The statutory phrase 'otherwise injure' must . . . be read in conjunction with the other verbs—cut down, girdle, and carry off.  Because each of these verbs connotes direct

action, this canon suggests that the timber trespass statute does not apply when a defendant fails to prevent the spread of a fire." (*Jongeward,* at p. 164; see also *id.* at p. 162 ["it seems more likely that the legislature used the term " 'trespass' " to mean direct acts causing immediate injuries, not culpable omissions causing collateral damage"].)  We conclude the same construction applies to injuries in section 3346 and does not reach accidental fire damage.  Instead, reading these two statutes together evinces the Legislature's purpose of curtailing timber misappropriation and awarding damages based on the reasonableness, good faith, or lack thereof, of the defendant's incursion.

The *Kelly* court found this conclusion unduly speculative. (*Kelly*, *supra*, 179 Cal.App.4th at p. 462.)  Obviously, we disagree.  The historical context in which the Legislature enacted section 3346 further convinces us that our interpretation today is the correct one.  California's timber trespass law traces back to early colonial enactments forbidding the cutting of timber from public grounds.  (See generally Kinney, *supra*, ch. VIII; *id.* at p. 66; cf., e.g., *Cotton v. United States* (1850) 52 U.S. 229 [action of trespass *quare clausum fregit* against defendant who had cut and removed timber trees from public land].)  These laws were "soon followed by laws imposing liability for single or multiple damages or penalties for the cutting of timber from private lands without the consent of the owner." (Kinney, *supra*, at p. 96.)  In "nearly every colony the civil liabilities imposed by the earlier acts proved insufficient to prevent trespass and later laws increased the exemplary damages or provided for imprisonment."  (*Ibid.*)  Then, after the founding of the United States, "new timber

trespass statutes were enacted in nearly all of the original states and as new states or territories were erected laws of this character were made effective in each." (*Id*. at pp. 96-97.) Many states, including California, "provide[d] for exemplary damages in the form of double or treble damages, or penalties, for the unlawful cutting of timber on the land of another or on public land." (*Id*. at p. 97 & fn. 1.) Forcing tortfeasors to pay the value of the timber was insufficient to deter willful misappropriation and would simply encourage a "do first, ask for forgiveness later" approach — if discovered, the logger simply paid for what he received. (See *Drewry*, *supra*, 236 Cal.App.2d at p. 176 [for torts like conversion and timber misappropriation, " 'compensatory damages will at most restore the wrongdoer to the *status quo ante* and may even leave him with a profit' "; Note, *DAMAGES: Statutory Double Damages Awarded for Casual or Involuntary Timber Trespass* — Drewry v. Welch *(Cal. 1965)* (1966) 54 Cal. L.Rev. 1843, 1846 (Note).) As the *Gould* court observed, damages multipliers in timber trespass laws "are an expression of the policy of increasing the risks of timber appropriation to the point of making it unprofitable." (*Gould*, *supra*, 5 Cal.App.3d at p. 408.)

Section 3346 and Code of Civil Procedure section 733 fit this general trend. Both derive from New York's timber trespass statutes and use language either substantially similar, or identical, to those laws.[3] As originally passed, the statutes

---

[3] See, e.g., *Fulle*, *supra*, 7 Cal.App.5th at p. 1310, fn. 2; *Kelly*, *supra*, 179 Cal.App.4th at p. 463, fn. 5; Proposed Revised Laws (1871) § 3347 [later adopted as Civ. Code § 3346]; Commissioners of the Code, The Civil Code of the State of New York, Report Complete (1865), § 1871, p. 579; 2 N.Y. Rev. Stat.

provided treble damages for injuries to trees but only actual damages for accidental trespassers or those trespassing under authority to rebuild public highways. We find nothing in the California Code Commissioners' note accompanying the 1872 adoption of the Civil Code suggesting that the Legislature "intend[ed] to accomplish [a] marked" expansion of the New York laws, let alone that it "chose[] to do so in language which differed only slightly," or not at all, from those laws. (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 819 (*Li*).) We also observe that in illustrating the purpose of the new section 3346, the Commissioners' note cited only cases fitting the traditional timber trespass model. (See Code commrs. note foll. 2 Ann. Civ. Code § 3346 (1st ed. 1872, Haymond & Burch, commrs-annotators) p. 412 [cases concerning "damages for cutting down growing trees" and "entry to cut and to sell the trees"]; cf. *Li, supra*, at p. 819 ["It would be even more surprising if the Code Commissioners, in stating the substance of the intended change, should fail to mention the law of any jurisdiction, American or foreign, which then espoused the new doctrine in any form, and should choose to cite in their note the very statutes and decisions which the New York Code Commissioners had cited in support of their statement of the common law rule"].) So the Commissioners' note tends to confirm that the new section 3346 broke no new ground. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1187 [Commissioners' notes are "entitled to substantial weight"].)

---

(1829) 338, §§ 1-3; see also Kinney, *supra*, at p. 104, fn. 1 [citing *Nixon v. Stillwell* (1889) 5 N.Y.S. 248 as example of statutory action for timber trespass]; *ibid.* [claim for treble damages under New York Code Civ. Proc. former §§ 1667 & 1668].

The same category of harm, we conclude, is targeted by both section 3346 and Code of Civil Procedure section 733: timber trespass. To conclude that section 3346 reaches removal of trees and a broad range of "wrongful injuries" (*id.*, subd. (a)) to trees while Code of Civil Procedure section 773 reaches only conventional timber trespass is implausible. Given their similar content, simultaneous codification, and shared roots in the New York statutes, it's at a minimum implausible that the legislative purpose was to create separate enhanced damages provisions for significantly overlapping but nonidentical harms.

We therefore agree with several Courts of Appeal that the purpose of section 3346, like other timber trespass statutes, is " ' "to educate blunderers (persons who mistake location of boundary lines) and to discourage rogues (persons who ignore boundary lines), to protect timber from being cut by others than the owner." ' " (*Fulle, supra,* 7 Cal.App.5th 1305, 1315; *Hassoldt v. Patrick Media Group, Inc.* (2000) 84 Cal.App.4th 153, 169 (*Hassoldt*); *Baker v. Ramirez* (1987) 190 Cal.App.3d 1123, 1138-1139; *Gould, supra,* 5 Cal.App.3d at p. 408; *Drewry, supra*, 236 Cal.App.2d at p. 177.) Section 3346 addresses situations where a person intentionally enters the land in question, either personally or through some agent or instrumentality, to cause direct, intentional injury to timber, trees, or underwood. It then varies damages depending on the culpability of the defendant's entry. Subjecting defendants like Lambirth to enhanced damages under section 3346 would not further such a statute's purposes.

Scholes argues that whatever the original scope of section 3346, the Legislature's 1957 repeal and reenactment of the statute (Stats. 1957, ch. 2346, § 2, p. 4076) expanded its

meaning. We are not persuaded. In advancing this argument, Scholes relies on the principle that we presume the Legislature's awareness of judicial decisions interpreting words it employs in a statute. (*Cruz, supra*, 13 Cal.4th at p. 775.) By using the word "trespass" when it repealed and reenacted Civil Code section 3346 in 1957, he contends, the Legislature was incorporating into the statute a common law concept that would have encompassed invasions of property, which were then understood as trespasses. (See *Coley, supra*, 206 Cal. at p. 28.) Lambirth's negligently escaping fire would constitute such a trespass. (See *Elton, supra*, 50 Cal.App.4th at p. 1307 ["When negligently inflicted with resulting actual damage, [an invasion by fire] may constitute a trespass"].)

Scholes is right that statutes often codify or otherwise incorporate common law doctrines. (See, e.g., *Stokeling v. United States* (2019) ___ U.S. ___, ___ [139 S.Ct. 544, 551] [" ' "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it" ' "]; *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 ["In this circumstance — a statute referring to employees without defining the term — courts have generally applied the common law test of employment"]; *People v. Tufunga* (1999) 21 Cal.4th 935, 946 ["[B]y adopting the identical phrase 'felonious taking' as used in the common law with regard to both [the larceny and robbery statutes of 1850], the Legislature in all likelihood intended to incorporate the same meanings attached to those phrases at common law"].) Scholes is also correct that statutory terms can be capacious enough to encompass evolving meanings, including for terms of art found in the common law. (See *Business*

*Electronics Corp. v Sharp Electronics Corp.* (1988) 485 US 717, 732 ["The Sherman Act adopted the term 'restraint of trade' along with its dynamic potential. It invokes the common law itself, and not merely the static content that the common law had assigned to the term in 1890"); *Leegin Creative Leather Products, Inc v PSKS, Inc* (2007) 551 US 877, 888 [quoting and reaffirming this passage from *Business Electronics*].) These observations nonetheless fail to advance Scholes's interpretation of section 3346, because we have strong reasons to doubt that the trespass mentioned in the statute is the plain vanilla common law kind, rather than the narrower, more specialized concept of *timber* trespass. The statute's language, its relationship to Code of Civil Procedure section 733, and historical context tend to confirm the common law's divergence from Code of Civil Procedure section 733 and Civil Code section 3346, in at least one respect. (*Ante*, at p. 14.) Because the "trespass" term used in section 3346 is a term of art separate from the evolving common law concept that shares the name, the scope of section 3346 does not spread to cover the terrain that common law trespass does.

Nor does the 1957 repeal and reenactment change this picture. We can glean nothing from the circumstances surrounding that repeal and reenactment to support the conclusion that the Legislature struck the more particularized meaning of trespass and replaced it with the common law meaning when it reenacted the new section 3346. Here's what the 1872 version of section 3346 stated: "For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such a sum as would compensate for the actual detriment, except

where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purposes of a highway; in which cases the damages are a sum equal to the actual detriment." (Civ. Code, former § 3346.) The current version of section 3346, subdivision (a), in which the first 43 words remain almost identical to the original enactment, now mandates that the "measure of damages shall be twice the sum as would compensate for the actual detriment" for "casual or involuntary" trespasses or where the defendant "had probable cause to believe that the land on which the trespass was committed was his own." The reenactment also added subdivision (b), assessing only actual damages for defendants whose belief that the land was theirs arose from a property line survey, and subdivision (c), specifying a five-year statute of limitations.

None of these changes altered anything about the scope of trespass as used in section 3346 or suggested a switch from its particularized meaning to the common law meaning. Instead, the changes recalibrated the damages assessed for those trespasses, authorizing new double damages for even unintentional breaches unless the defendant demonstrated reasonable care by procuring a land survey. So it seems most plausible the Legislature's primary purpose in 1957 tracked much the same concern that motivated the enactment of the timber trespass law in the first place: to deter the wrongful breach of property lines for the sake of cutting or other direct forms of injury to another's trees, and to encourage property owners to take appropriate steps to determine where the lines fall. Also left unchanged was Code of Civil Procedure section

733, the provision for which section 3346 provides the measure of damages. (*Ante*, at p. 14.) This level of continuity strains the case that the 1957 reenactment adopted the more expansive common law meaning of trespass.

What's more, double damages for mistaken trespasses stand out, as the Legislature typically reserves enhanced damages for deterring willful conduct. They are the exception and not the rule for accidental harms. (See *Drewry*, *supra*, 236 Cal.App.2d at pp. 176-177; § 3294.) The need for such an exception is more apparent for intentionally felled trees than for accidentally destroyed ones. Actual damages could leave defendants who cut down trees with a profit. (See *Drewry*, *supra*, at p. 176; Note, *supra*, 54 Cal. L.Rev. at p. 1846.) Knowing this, the Legislature might reasonably find it necessary to penalize even accidental trespassers, while creating a safe harbor for those who procure land surveys, to promote the proper level of care. (See *Green v. Southern Timber Co.* (S.D. Ga. 1923) 291 F. 582, 584 ["Reckoning the damage on the basis of stumpage would be to disregard the unwillingness of the owner to sell. The defendant was a trespasser, even though unwittingly. Surely he should be content to forego any profit"].) In contrast, it's difficult to see what benefit someone gleans from accidentally burning someone else's woods, and so the punitive and deterrent aspects of the statute seem to have minimal application in that scenario. In modern cases adopting the "timber trespass" concept, courts recognize these punitive and deterrent aspects by emphasizing a wrongdoer's potential profit from the cutting or removal of another's trees. (See *Fulle, supra,* 7 Cal.App.5th at p. 1309 [defendant cut his neighbor's trees to improve his view and raise his home value]; *Hassoldt,*

*supra,* 84 Cal.App.4th at pp. 157, 169 [defendant cut his neighbor's trees to expose his billboard].) But defendant does not appear to profit by negligently allowing a fire to escape the property. To the extent a potential defendant might be tempted to dispense with the cost of certain fire prevention measures because no liability for negligent fire-spreading might arise under section 3346, liability would still exist under other statutes and at common law — and defendants would still run the risk of damage to their own timber. (See, e.g., *People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627, 633 [noting that Health & Saf. Code §§ 13007 and 13008 codify the basis of fire liability]; *Elton, supra,* 50 Cal.App.4th at p. 1307 ["When negligently inflicted with resulting actual damage, [an invasion by fire] may constitute a trespass"].) So it's not clear section 3346 would serve its deterrent purpose. Furthermore, an extended statute of limitations — the second major change from the 1957 repeal and reenactment — makes sense for intentional removal of trees that a landowner may not discover until much later. (See Note, *supra*, at p. 1846 & fn. 16.)

Legislative history likewise indicates that a desire to strengthen the existing law, without expanding its application beyond timber misappropriation, motivated the 1957 repeal and reenactment. (See *Fulle, supra,* 7 Cal.App.5th 1305, 1315, fn. 6 ["The legislative history of Assembly Bill No. 2526 (1957 Reg. Sess.) indicates the double damages provision was added to section 3346 in order to more effectively deter timber appropriation by those who carelessly or negligently fail to accurately determine a boundary line"].) Constituents and federal officials both wrote to the Eureka assembly member who introduced the legislation to express their concerns about the

problem. As one writer from the United States Bureau of Land Management lamented, "[T]he Bureau of Land Management ha[d] an extremely serious timber trespass situation on forested public domain lands in northern California. . . . With single stumpage generally the required payment for timber stolen if the culprits are found or unless criminal intent could be proved, the former timber legislation was largely an open invitation to unscrupulous loggers to help themselves." (James F. Doyle, Area Administrator, U.S. Dept. of the Interior, Bureau of Land Management, letter to Assemblyman Frank P. Belotti, July 26, 1957.)

In another letter, a timberland owner named G. Kelton Steele described how "[t]he great rise in timber values during the past few years," combined with timber scarcity, had "created a temptation to trespass and often to cause the logger to 'give himself the benefit of the doubt,' as far as the exact location of a property line is concerned." (G. Kelton Steele, letter to Assemblyman Frank P. Belotti, Feb. 12, 1957.) In Steele's experience with such "timber trespass" lawsuits, "it [was] a rare thing" to be able to prove such willful trespasses and recover treble damages. (*Ibid.*) The Legislature seems to have been trying to curb this abuse of the former statute, contemporarily understood as a timber trespass statute. (See also Note, *supra*, 64 Cal. L.Rev. at pp. 1846-1847 ["If held liable for trespassing, [timber operators] quite frequeutly [*sic*] escaped with paying only stumpage value, which they were willing to pay for the trees in the first place. In addition, the trespass might never be discovered at all. [Fn. omitted.] Balanced against this possibility of paying nothing at all or actual value was the slim possibility of having to pay treble damages. [Fn. omitted.] To

the extent that the double damage provision of section 3346 deters timber raids and more adequately compensates the victims of timber trespass, it is a valid effort by the legislature to cure an inadequacy in the law"].)

## B.

Further insight into the Legislature's purpose comes from our state's fire liability statutes, currently codified at Health and Safety Code section 13007 et seq. Section 13007 states that a person who "wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him to escape to, the property of another . . . is liable to the owner of such property for any damages to the property caused by the fire." (Health & Saf. Code, § 13007.) Similarly, Health and Safety Code section 13008 states that "[a]ny person who allows any fire burning upon his property to escape to the property of another . . . without exercising due diligence to control such fire, is liable to the owner of such property for the damages to the property caused by the fire." Section 13009 requires the liable party to pay associated costs for fire suppression and rescue or emergency medical services. (*Id.*, § 13009.)

We must reconcile our interpretation of section 3346 with these statutes, too — as they all function together within the same broader statutory scheme. (See, e.g., *Pesce v. Department of Alcoholic Beverage Control* (1958) 51 Cal.2d 310, 312.) Scholes, like the *Kelly* court, sees his interpretation of section 3346 as "easily harmonized" with these statutes: "Under [Health and Safety Code] section 13007, a tortfeasor generally is liable to the owner of property for damage caused by a negligently set fire. . . . If the fire also damages trees . . . then

the actual damages recoverable under [Health and Safety Code] section 13007 may be doubled (for negligently caused fires) or trebled (for fires intended to spread to the plaintiff's property) . . . ." (*Kelly*, *supra*, 179 Cal.App.4th at p. 461.) Lambirth takes the view of *Gould*, contending that to give full effect to the Legislature's aims in enacting the Health and Safety statutes, we must conclude that "the Legislature has set up a statutory scheme concerning timber fires completely separate from the scheme to meet the situation of the cutting or other type of injury to timber." (*Gould*, *supra*, 5 Cal.App.3d at p. 407.)

The parallel histories of section 3346 and the fire statutes tend to reinforce that the Legislature did not include negligently spread fires within the ambit of section 3346. In the same year that it enacted section 3346, the Legislature also enacted the predecessor to the fire liability statutes, imposing treble damages for damage from fire that accidentally spreads to adjoining property. Former Political Code section 3344 stated: "Every person negligently setting fire to his own woods, or negligently suffering any fire to extend beyond his own land, is liable in treble damages to the party injured." In 1905, the Legislature moved the substance of this provision into the Civil Code as former section 3346a. (Civ. Code, former § 3346a; Assem. J. (1905 Reg. Sess.) p. 688.) While this law by its terms provided recovery for all damaged property and not just timber, the historical context indicates that protecting forests and timber would have been of principal concern. In *Garnier v. Porter* (1891) 90 Cal. 105 (*Garnier*), we recognized that "[w]hen [former Political Code section 3344] was first enacted, the lands of this state were generally uninclosed [*sic*], and unoccupied,

26

save for grazing purposes. Frequent fires spread over the country, destroying timber, grass, and other property. . . . Unquestionably, the law was designed to prevent such calamities as far as possible." (*Id.* at p. 108.) Having authorized treble damages under former Political Code section 3344 for harm to timber from negligently spread fires, it is unclear why the Legislature would have simultaneously created a duplicate remedy under section 3346.

Nor do we see any evidence of such a historical understanding. In the years after 1872, both this court and litigants viewed only former Political Code section 3344 and its successor, Civil Code former section 3346a, as the proper cause of action for treble damages for negligently caused fire damage. (See *Garnier, supra*, 90 Cal. at pp. 106-107; *Galvin v. Gualala Mill Co.* (1893) 98 Cal. 268, 270; *Kennedy v. Minarets & W. Ry. Co.* (1928) 90 Cal.App. 563, 579, 581.) Scholes identifies, and we have found, no California cases before *Kelly* treating the destruction of trees by the spread of fire as a form of timber trespass under section 3346 and Code of Civil Procedure section 733, even after our courts had eliminated the distinction between direct and indirect trespasses. Instead, reported cases of actions under section 3346 involved only the intentional tree removal. (See, e.g., *Drewry, supra,* 236 Cal.App.2d at p. 164; *Caldwell v. Walker* (1963) 211 Cal.App.2d 758, 761-762; *Fick v. Nilson* (1950) 98 Cal.App.2d 683, 684; *Swall, supra,* 60 Cal.App.2d at p. 827; *Stewart, supra,* 108 Cal. at p. 207.) We believe the historical uses of these causes of action, while by no means dispositive or preeminent in our analysis, reinforce our conclusion about the legislative purpose that the preceding statutory analysis already favors.

Importantly, reading section 3346 to exclude damage from negligently escaping fires avoids undermining the Legislature's purpose in subsequently repealing former Political Code section 3344 and Civil Code former section 3346a. In 1931, the Legislature removed former section 3346a from the penal statutes of the Civil Code and enacted what would later become the Health and Safety Code provisions. (Stats. 1931, ch. 790, §§ 1-6, p. 1644; see also Stats. 1953, ch. 48, §§ 1-3, p. 682; *Department of Forestry & Fire Protection v. Howell* (2017) 18 Cal.App.5th 154, 177 [summarizing legislative history].) The new provisions expanded the former provisions' coverage to both willful and negligently caused fire damage. But this statutory shakeup also shifted away from a system that awarded punitive, enhanced damages solely to the owner of affected property towards a system that compensated *all* affected parties, including the public agencies who respond to the emergency, for their actual damages. The new system recognized that the costs of uncontrolled fires in our state extend beyond property owners and ensured that negligent defendants' resources go first and foremost to compensatory ends.

In short, we tend to think the Legislature signaled in 1931 its conclusion that enhanced damages were no longer appropriate, as a matter of course, for negligently spread fires. (*County of Los Angeles v. State of California* (1987) 43 Cal.3d 46, 55 [" '[I]t is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law' "].) Under Scholes's interpretation, the Legislature would have eliminated treble damages more generally to ease the strain borne by the public fisc from fire control, while implicitly preserving treble damages, and later

adding double damages in the case of unintended trespasses, just for fire damage to trees under section 3346.

Scholes fails to persuade us that the Legislature understood itself to exempt timber, trees, and underwood from an otherwise comprehensive scheme. California's trees number in the millions; injuries to them could produce enormous liability with the imposition of separate penal damages on top of any otherwise existing potential legal exposure from fire escaping to surrounding properties. Courts have held defendants liable for the fair market value of destroyed timber, the cost of reforestation (see *People v. Southern Pacific Co.* (1983) 139 Cal.App.3d 627, 635), lost profits from any business connected to the damaged property (see *McKay v. State of California* (1992) 8 Cal.App.4th 937, 938), and nonpecuniary damages for loss of use and enjoyment, annoyance and discomfort, and emotional distress (see *Hensley v. San Diego Gas & Electric Co.* (2017) 7 Cal.App.5th 1337, 1351-1352). This robust and comprehensive fire liability scheme strongly suggests that, contrary to Scholes's assertion, the Legislature provided for compensation in the event fire spread negligently instead of leaving a gap implying a need for section 3346 to play that role.

And notice what a peculiar scheme would result if both section 3346 and Health and Safety Code section 13007 covered negligent fire-spreading. Trees and timber would be compensated at $2 or $3 for every dollar of damages, but damage to people would be compensated at a ratio of $1 of compensation for every dollar of damage.

That fire liability is an enormously consequential and complicated issue for Californians is beyond question. The

relative bustle of legislative action in this domain showcases an evolving story of balancing competing considerations — which includes creating the right incentives for large entities and individuals while recognizing the possibility of limits on available resources for compensation. We decline to read anything in section 3346 as disrupting the balance evidently struck when the Legislature replaced treble damages for negligently escaping fires with fire suppression liability. The Legislature can further calibrate this framework if it decides that negligently-caused tree damage deserves even more protection than what other causes of action already provide.

## III.

California protects the public from negligently spread fire, but not through the provisions on damage to trees or timber in section 3346. The section's language, structure, and statutory and historical context support a reasonable inference that the legislative purpose of this provision was to implement and maintain the kind of timber trespass law commonly used in different states to deter misappropriation of these natural resources. The law discourages " 'rogues' " and educates " 'blunderers' " (*Drewry*, *supra*, 236 Cal.App.2d at p. 177) who intrude on others' land to cause direct, intentional injuries to timber, trees, and underwood. What this interpretation still allows is for plaintiffs like Scholes to pursue and recover full compensation for their losses under other applicable remedies.

We do not address whether, under section 3294, exemplary damages beyond actual losses apply to cases where a person "wilfully" commits the acts prohibited by Health and Safety Code section 13007. (See § 3294, subd. (a) [authorizing damages for "malic[ious acts] . . . for the sake of example and by

way of punishing the defendant"].)  Nor do we address whether treble damages under section 3346 apply to cases of direct, intentional injuries to trees through fire.  We simply hold that section 3346 does not provide enhanced damages or a longer statute of limitations for injuries to timber, trees, or underwood from negligently spread fires.  To the extent the holding in *Kelly v. CB&I Constructors, Inc., supra,* 179 Cal.App.4th 442 is inconsistent with this opinion, we disapprove of it.

We therefore affirm the judgment of the Court of Appeal.

**CUÉLLAR, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**ARONSON, J.***
**BANKE, J.****

---

\* Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

\*\* Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Scholes v. Lambirth Trucking Co.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 10 Cal.App.5th 590
**Rehearing Granted**

_____

**Opinion No.** S241825
**Date Filed:** February 20, 2020

_____

**Court:** Superior
**County:** Colusa
**Judge:** Jeffrey A. Thompson

_____

**Counsel:**

Vincent E. Scholes, in pro. per.; Singleton Law Firm, Gerald Singleton; Law Offices of Martin N. Buchanan and Martin N. Buchanan for Plaintiff and Appellant.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Anwyl, Scoffield & Stepp, James T. Anwyl; Spinelli, Donald & Nott and Lynn A. Garcia for Defendant and Respondent.

Horvitz & Levy, Robert H. Wright and Jeremy B. Rosen for Pacific Gas and Electric Company as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Martin N. Buchanan
Law Offices of Martin N. Buchanan
655 West Broadway, Suite 1700
San Diego, CA 92101
(619) 238-2426

Lynn A. Garcia
Spinelli, Donald & Nott
601 University Ave., Suite 225
Sacramento, CA 95825
(916) 448-7888